# EXHIBIT B

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION,<br><br>*Plaintiff*,<br><br>v.<br><br>KEN PAXTON, in his official capacity as Attorney General of Texas,<br><br>*Defendant*. | Civil Action No.  1:25-cv-01660<br><br>**DECLARATION OF MATTHEW SCHRUERS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

I, Matthew Schruers, declare as follows:

1.      I am the President & CEO of the Computer & Communications Industry Association (CCIA). I have worked at the organization for 20 years. Upon joining CCIA, I focused on legal, legislative, and policy matters, later taking on the roles of Chief Operating Officer and President and CEO. In each of these capacities, I have worked closely and communicated often with CCIA members regarding how public policy proposals affect their businesses, operations, and relationships with their users. Through my experience, I have also gained familiarity with how such proposals affect all manner of websites, applications, and other

digital services.[1]

2.    I submit this declaration in support of Plaintiff's Motion for Preliminary Injunction. I am over the age of 18 and am competent to make the statements herein. I have personal knowledge of the facts set forth in this declaration and, if called and sworn as a witness, could and would competently testify to them.

## I.    About CCIA and CCIA's Affected Members

3.    CCIA is an international, not-for-profit membership association representing a broad cross-section of companies in the computer, Internet, information technology, and telecommunications industries. For more than fifty years, CCIA has promoted open markets, open systems, and open networks, and advocated for the interests of the world's leading providers of technology products and services before governments and the courts.[2]

4.    CCIA's members include computer and communications companies, equipment manufacturers, software developers, service providers, re-sellers, integrators, and financial service companies.[3]

5.    Several of CCIA's members operate "app stores" and/or function as "developers" of software applications as those terms are used by Texas Senate Bill No. 2420, 89th Leg. (Tex. 2025) ("S.B. 2420") including, at a minimum: (1) Google, which owns and operates the Google Play Store and has developed various mobile apps such as Google Search, YouTube, Gmail, and

---

[1]  This Declaration will refer to all digital services—including app stores and mobile applications—as "services" unless necessary to distinguish among different kinds of digital services.

[2] CCIA, Home, https://ccianet.org/ [https://perma.cc/T9EQ-5GC3].

[3] Currently, CCIA's members include: Amazon, Apple, Cloudflare, Coupang, Deliveroo, eBay, EchoStar, Google, Intel, Intuit, Meta, Nord Security, Opera, Pinterest, Shopify, Texas.net, Uber, Viagogo, Waymo, and Zebra.

Google Maps; (2) Amazon, which owns and operates the Amazon Appstore and has developed various mobile apps such as Audible, IMDb, and Goodreads; and (3) Apple, which owns and operates the Apple App Store.

6.      S.B. 2420 defines "app store" to mean a "publicly available Internet website, software application, or other electronic service that distributes software applications from the owner or developer of a software application to the user of a mobile device." *Id.* § 121.002(2).

7.      S.B. 2420 defines a "mobile device" to mean "a portable, wireless electronic device, including a tablet or smartphone, capable of transmitting, receiving, processing, and storing information wirelessly that runs an operating system designed to manage hardware resources and perform common services for software applications on handheld electronic devices." *Id.* § 121.002(4).

8.      Based on my experience in the industry, my review of the declaration submitted by Matthew Bye on behalf of Google, and information publicly available about how the Google Play Store's services operate, it is my understanding that Google owns and operates the Google Play Store, that the Google Play Store meets the criteria to constitute an "app store" under S.B. 2420, § 121.002(2), (4), and that Google is thus "the owner of the app store," *id.* § 121.021(a).

9.      The Google Play Store is "publicly available," Tex. Bus. & Com. Code § 121.002(2), as it is available to any individual in the United States who obtains a Google Account, subject to certain age restrictions.[4]

---

[4] Google Play Terms of Service (July 1, 2024), https://play.google.com/intl/en-US_us/about/play-terms/ (last visited Oct. 14, 2025) (on file with Google).

10.     The Google Play Store is an "Internet website, software application, or other electronic service," Tex. Bus. & Com. Code § 121.002(2), as it is available in the form of an Internet website, [5] and as an "app [that] comes pre-installed on Android devices that support Google Play."[6]

11.     The Google Play Store "distributes software applications from the owner or developer of a software application[,]" Tex. Bus. & Com. Code § 121.002(2), as Google enters agreements with "Developers," meaning "[a]ny person or company who provides Products for distribution through Google Play in accordance with the terms of [the Google Play Developer Distribution] Agreement."[7]

12.     The Google Play Store "distributes software applications . . . to the user of a mobile device," Tex. Bus. & Com. Code § 121.002(2), (4), as Google Play Store users "may use Google Play to browse, locate, view, stream, or download Content for [their] mobile, computer, tv, watch, or other supported device (**"Device"**)," where "Content" is defined as "apps (including Android Instant Apps), system services, games, movies, books, magazines, or other digital content or services" available through Google Play. [8]

13.     It is my understanding that the Google Play Store has users who are under 18 years of age who are in Texas.

---

[5] Google Play, https://play.google.com/store/games (last visited Oct. 14, 2025) (on file with Google).

[6] Find the Google Play Store App, https://support.google.com/googleplay/answer/190860 (last visited Oct. 14, 2025) (on file with Google).

[7] Google Play Developer Distribute Agreement (effective as of Sept. 15, 2025), https://play.google/developer-distribution-agreement.html (last visited Oct. 14, 2025) (on file with Google).

[8] *See* supra note 4 (emphasis in original).

14.     Google is also the "owner" or "developer of a software application that the developer makes available to users in [Texas] through an app store." Tex. Bus. & Com. Code §§ 121.002(2); 121.051. Among other software applications, Google is the developer of Google Search,[9] Gmail,[10] YouTube,[11] and Google Maps.[12] These are software applications available for download on mobile devices such as phones or tablets through the Google Play Store.

15.     Based on my experience in the industry and on information publicly available about how the Amazon Appstore's services operate, it is my understanding that Amazon owns and operates the Amazon Appstore, that the Amazon Appstore meets the criteria to constitute an "app store" under S.B. 2420 § 121.002(2), (4), and that Amazon is thus "the owner of the app store," *id.* § 121.021(a).

16.     The Amazon Appstore is "publicly available," Tex. Bus. & Com. Code § 121.002(2), as it is available in over 200 countries and territories,[13] and customers from the

---

[9] Google, Google Play Store, https://play.google.com/store/apps/details?id=com.google.android.googlequicksearchbox&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[10] Gmail, Google Play Store, https://play.google.com/store/apps/details?id=com.google.android.gm&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[11] YouTube, Google Play Store, https://play.google.com/store/apps/details?id=com.google.android.youtube&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[12] Google Maps, Google Play Store, https://play.google.com/store/apps/details?id=com.google.android.apps.maps&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[13] About the Amazon Appstore, https://www.amazon.com/gp/help/customer/display.html?nodeId=GP96AU3MQ58FMV8U (last visited Oct. 14, 2025) (on file with Amazon.com).

United States are eligible to shop for apps from the Amazon Appstore on Amazon.com.[14]

17.     The Amazon Appstore is an "Internet website, software application, or other electronic service," Tex. Bus. & Com. Code § 121.002(2), as it is available in the form of an Internet website[15] and as software available on Amazon's Fire Tablet devices.[16]

18.     The Amazon Appstore "distributes software applications from the owner or developer of a software application[,]" Tex. Bus. & Com. Code § 121.002(2), as developers or owners of apps "can distribute [their] apps and games on Amazon Fire devices" and can "submit [their] app, digital software, or video game to Amazon" using the Amazon Developer Console.[17]

19.     Finally, the Amazon Appstore "distributes software applications . . . to the user of a mobile device," Tex. Bus. & Com. Code § 121.002(2), (4), as users can "browse for apps and download them to compatible devices" including Fire Tablet mobile devices.[18]

20.     It is my understanding that the Amazon Appstore has users who are under 18 years of age who are in Texas.

---

[14] Countries & Territories Eligible to Shop for Apps on Amazon.com, https://www.amazon.com/gp/help/customer/display.html?nodeId=GSXRFWKVKXYMK8GS (last visited Oct. 14, 2025) (on file with Amazon.com).

[15] Amazon Appstore Home, https://www.amazon.com/mobile-apps/b/?ie=UTF8&node=2350149011 (last visited Oct. 14, 2025) (on file with Amazon.com).

[16] Install an App on Your Fire Tablet, https://www.amazon.com/gp/help/customer/display.html?nodeId=G89P5HPD7RQFPB2A (last visited Oct. 14, 2025) (on file with Amazon.com).

[17] App Submission FAQ, Amazon Appstore General Questions, https://developer.amazon.com/docs/app-submission/faq-submission.html (last visited Oct. 14, 2025) (on file with Amazon.com).

[18] About the Amazon Appstore, https://www.amazon.com/gp/help/customer/display.html?nodeId=GP96AU3MQ58FMV8U (last visited Oct. 14, 2025) (on file with Amazon.com).

21.     Amazon is the "owner" or "developer of a software application that the developer makes available to users in [Texas] through an app store." Tex. Bus. & Com. Code §§ 121.002(2); 121.051. Those software applications Amazon owns or develops include Kindle,[19] Audible,[20] IMDb,[21] and Goodreads.[22]

22.     Finally, based on my experience in the industry and on information publicly available about how the Apple App Store's services operate, it is my understanding that Apple owns and operates the App Store, that the App Store meets the criteria to constitute an "app store" under S.B. 2420, § 121.002(2), (4), and that Apple is thus "the owner of the app store," *id.* § 121.021(a).

23.     Apple's App Store is "publicly available," Tex. Bus. & Com. Code § 121.002(2), as it is available to users with an internet connection and an Apple Account.[23] The App Store is available to individuals across the United States.[24]

---

[19] Kindle for Android, Amazon.com Appstore, https://www.amazon.com/Amazon-com-Kindle-for-Android/dp/B004DLPXAO (last visited Oct. 14, 2025) (on file with Amazon.com).

[20] Audible, Inc., Amazon.com Appstore, https://www.amazon.com/Audible-Audiobooks-Podcasts-for-Android/dp/B004GJ6BY0 (last visited Oct. 14, 2025) (on file with Amazon.com).

[21] IMDb Mobile, LLC, Amazon.com Appstore, https://www.amazon.com/IMDb-Mobile-LLC-Movies-TV/dp/B004GISARW (last visited Oct. 14, 2025) (on file with Amazon.com).

[22] Goodreads, Amazon.com Appstore, https://www.amazon.com/Goodreads/dp/B005AKD836 (last visited Oct. 14, 2025) (on file with Amazon.com).

[23] Get apps in the App Store on iPhone, https://support.apple.com/guide/iphone/get-apps-iphc90580097/18.0/ios/18.0 (last visited Oct. 14, 2025) (on file with Apple).

[24] Availability of Apple Media Services, https://support.apple.com/en-us/118205 (last visited Oct. 14, 2025) (on file with Apple).

24.     Apple's App Store is an "Internet website, software application, or other electronic service," Tex. Bus. & Com. Code § 121.002(2), as it is available in the form of an app on, for example, iPhones and iPads.[25]

25.     Apple's App Store "distributes software applications from the owner or developer of a software application[,]" Tex. Bus. & Com. Code § 121.002(2), as developers or owners of apps can use the App Store to "easily deliver apps to hundreds of millions of people around the world on their iPhone, iPad, Mac, Apple TV, Apple Watch, and Apple Vision Pro."[26]

26.     Apple's App Store "distributes software applications . . . to the user of a mobile device," Tex. Bus. & Com. Code § 121.002(2), (4), as an App Store user can "[b]rowse through the Today, Games, Apps, or Arcade tabs to find apps [he or she] like[s]" or search for specific content and download and/or purchase apps onto his or her iPhone or iPad.[27]

27.     It is my understanding that the Apple App Store has users who are under 18 years of age who are in Texas.

28.     These three S.B. 2420-covered members who operate app stores enable billions of users around the world to create and share content using their services, whether to facilitate work, study, prayer, socialization, commerce, or communication. These companies also moderate and curate what is displayed on their services as a vital part of their operations. They disseminate

---

[25] *See id.*; *see also* Get apps in the App Store on iPad, https://support.apple.com/guide/ipad/get-apps-ipad9b4cea76/18.0/ipados/18.0 (last visited Oct. 14, 2025) (on file with Apple).

[26] Apple Developer, App Store, https://developer.apple.com/distribute/ (last visited Oct. 14, 2025) (on file with Apple).

[27] Download apps on your iPhone or iPad, https://support.apple.com/en-us/102590 (last visited Oct. 14, 2025) (on file with Apple).

a massive and constantly expanding amount of content in order to provide valuable products and tools for their users.

## II.    Valuable and Protected Speech on CCIA Members' Digital Services

29.    The content on CCIA members' digital services comes from all over the world and is incredibly diverse. The services enable and provide a forum for the height of human thought and creativity: material that runs the gamut from being culturally significant, informative, educational, or politically engaging to funny and entertaining. These services are critical gateways for accessing and disseminating protected speech and expression, and millions of individuals use these services daily to engage in speech.

30.    CCIA members' services offer access to a wide array of highly valuable speech and viewpoints, and adults and minors alike benefit from access to these services. For example, member services host apps that allow users to download ebooks from their local library;[28] access and learn about the collection of the Metropolitan Museum of Art;[29] take online courses through Coursera or Khan Academy;[30] paint pictures using the apps like Sketchbook app;[31] publish or read essays on virtually any topic via apps like their own written material on Substack or

---

[28] E.g., Libby, the Library App, https://play.google.com/store/apps/details?id=com.overdrive.mobile.android.libby&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[29] TheMET, https://play.google.com/store/apps/details?id=com.museumtech.themetaudioguide (last visited Oct. 14, 2025) (on file with Google).

[30] Coursera, https://play.google.com/store/apps/details?id=org.coursera.android&hl=en_US (last visited Oct. 14, 2025) (on file with Google); Khan Academy, https://play.google.com/store/apps/details?id=org.khanacademy.android&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[31] Sketchbook, https://play.google.com/store/apps/details?id=com.adsk.sketchbook&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

Reddit;[32] track politics on Politico;[33] read the news on the New York Times or Wall Street Journal;[34] download and read or listen to nearly a lifetime's supply of books via apps like Goodreads, Kindle, and Audible;[35] share photos and videos with family and friends through Flickr;[36] play crossword puzzles or other games on apps like Crossword Explorer, SudokuMagic, or Chess.com;[37] access and store recipes on apps like Paprika or NYT Cooking;[38] listen to the world's collection of music on Spotify, Amazon Music, or Tidal;[39] find new indie bands on Bandcamp;[40] and watch movies or television shows or movies on Netflix, Tubi, or YouTube.[41]

31.     Millions of Americans, and billions of people worldwide, use at least one of CCIA members' digital services. Google Play, for example, explains that it enables "more than 2.5 billion monthly users across 190+ markets worldwide to discover millions of high-quality

[32] Substack, https://play.google.com/store/apps/details?id=com.substack.app&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[33] Politico, https://play.google.com/store/apps/details?id=com.politico.android&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[34] NYTimes, https://play.google.com/store/apps/details?id=com.nytimes.android&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[35] E.g., Goodreads, https://play.google.com/store/apps/details?id=com.goodreads&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[36] Flickr, https://play.google.com/store/apps/details?id=com.flickr.android&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[37] E.g., Chess.com, https://play.google.com/store/apps/details?id=com.chess&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[38] E.g., Paprika Recipe Manager 3, https://play.google.com/store/apps/details?id=com.hindsightlabs.paprika.android.v3&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[39] E.g., Spotify, https://play.google.com/store/apps/details?id=com.spotify.music&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[40] Bandcamp, https://play.google.com/store/apps/details?id=com.bandcamp.android&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

[41] E.g., Netflix, https://play.google.com/store/apps/details?id=com.netflix.mediaclient&hl=en_US (last visited Oct. 14, 2025) (on file with Google).

apps, games, books, and more." [42] Apple's App Store connects developers "to over 1.5 billion devices in 175 regions."[43]

32.     Accordingly, CCIA's members offer their users the opportunity to (1) maintain connections with friends and family and create new connections, (2) express themselves and their creative works, (3) stay informed about current events and engage in their own political and social speech on the day's issues, (4) learn from others, whether through expressly educational content or through the ability for cross-cultural exchange, and (5) find high-quality and engaging expression.

## III.     CCIA Members Offer Parents Many Voluntary Ways to Monitor Their Minor Children's Internet Use.

33.     CCIA holds a firm conviction that children are entitled to a higher level of security and privacy in their online experiences. But not only do parents already have widely available tools to monitor and control their children's online behavior, CCIA's members are already actively engaged in various initiatives to integrate new, robust, and protective design features into their digital services.

34.     For example, CCIA members that operate app stores engage in content rating for all or almost all of their apps. These processes vary across app stores, but typically involve a form of collaborative content analysis and rating to determine and display an app's age appropriateness. For Apple, apps published in the U.S. App Store are rated 4+, 9+, 13+, 16+, and

---

[42] How Google Play Works, https://play.google/howplayworks/ (last visited Oct. 14, 2025) (on file with Google).

[43] Apple, Developing for the App Store, https://www.apple.com/app-store/developing-for-the-app-store/ (last visited Oct. 14, 2025) (on file with Apple).

18+.[44] Amazon uses its own rating system, which is 0-12, 13-15, 16-17, and 18+.[45] Google, in contrast, uses the ESRB rating system—0-9, 10+, 13+, 17+, and 18+.[46]

35.    In addition to rating content for age appropriateness, all of CCIA's app store members engage in content filtering and will ban apps that do not comport with app stores' content policies. Apple, for instance, will reject apps that contain "objectionable content," defined as content that is "offensive, insensitive, upsetting, intended to disgust, in exceptionally poor taste, or just plain creepy."[47] The Google Play Store will "prohibit[] content" that "contain[s] or promote[s] sexual content or profanity," "hate speech," "violence" or "violent extremism."[48] The Play Store also bans content that facilitates bullying or dangerous products, or content that "capitalize[s] on or [is] insensitive towards" certain "sensitive event(s)" such as natural disasters, civil emergencies, deaths, "or other tragic events."[49] The Amazon Appstore will "reject[] or suppress[]" apps which contain content that would not be considered

---

[44] *See* Apple, Apple Expands Tools to Help Parents Protect Kids and Teens Online (June 11, 2025),
https://www.apple.com/newsroom/2025/06/apple-expands-tools-to-help-protect-kids-and-teens-online (last visited Oct. 14, 2025) (on file with Apple).

[45] *See* Moses Roth, Navigating App Submission and Compliance with Confidence (Feb. 25, 2025),
https://developer.amazon.com/apps-and-games/blogs/2025/02/navigating-app-submission-and-compliance (last visited Oct. 14, 2025) (on file with Amazon.com).

[46] *See* Google, Apps & Games Content Ratings on Google Play,
https://support.google.com/googleplay/answer/6209544 (last visited Oct. 14, 2025) (on file with Google).

[47] Apple, App Review Guidelines (rev. June 9, 2025),
https://developer.apple.com/app-store/review/guidelines/#safety (last visited Oct. 14, 2025) (on file with Apple).

[48] Google, Inappropriate Content,
https://support.google.com/googleplay/android-developer/answer/9878810 (last visited Oct. 14, 2025) (on file with Google).

[49] *Id.*

"family-friendly."[50] Examples of "restricted content" include "sexually explicit content," "hateful or harassing content," "inaccurate or misleading medical advice," "illegal, reckless, dangerous, or harmful content," "insensitivity towards a sensitive event," or violence and violent extremism.[51]

36.    All of CCIA's app store members use their content rating systems to flag and impose additional restrictions on apps directed towards younger audiences. Before such an app may be published in the Google Play Store, Google requires that the app comply with its Google Play Families Policies.[52] Under these policies, apps will be suspended or removed unless they contain only "content" that is "appropriate for children" and impose additional data privacy safeguards to minimize the disclosure of children's personal information.[53] Additionally, "social apps" targeted at children "must also provide a method for adults to manage social features for child users, including, but not limited to, enabling/disabling the social feature or selecting different levels of functionality."[54] Similarly, Apple tags child-directed apps and sorts them into a "Kids Category."[55] Those apps also must contain only age-appropriate content, provide additional protections over the use and disclosure of children's data, and implement "parental

---

[50] Amazon, Amazon Appstore Content Policy,
https://developer.amazon.com/docs/policy-center/understanding-content-policy.html (last visited Oct. 14, 2025) (on file with Amazon.com).

[51] Amazon, Restricted Content Policy,
https://developer.amazon.com/docs/policy-center/restricted-content.html (last visited Oct. 14, 2025) (on file with Amazon.com).

[52] Google, Google Play Families Policies,
https://support.google.com/googleplay/android-developer/answer/9893335 (last visited Oct. 14, 2025) (on file with Google).

[53] *Id.*

[54] *Id.*

[55] Apple, Building Apps for Kids,
https://developer.apple.com/kids/#:~:text=The%20Kids%20Category,in%20order%20to%20be%20displayed (last visited Oct. 14, 2025) (on file with Apple).

gates to moderate a child's ability to perform certain actions" "such as buying In-App Purchases without permission, or following link outs . . .".[56] Likewise, Amazon requires all "child-directed apps" to contain "age-appropriate content," "comply with all applicable laws, including the Children's Online Privacy Protection Act," block all advertising, and only collect limited categories of personal data.[57]

37.     On top of these *ex ante* requirements, CCIA's app store members provide additional voluntary tools for parents to control their children's exposure to apps and content. The Google Play Store allows parents to set up controls on their children's accounts.[58] These controls allow parents to, for example, restrict apps and games on an Android device by choosing categories of content allowed for download or purchase; lock their child's screen during certain hours such as bedtime; approve all purchases and new apps that the child wants to download, and more.[59] The Apple App Store similarly allows parents to set age-related restrictions for content; prevent their children from installing or deleting apps or making in-app purchases in apps; restrict app downloads and games; and manage their child's privacy settings.[60] Additionally, Amazon's Appstore Parent Dashboard allows parents to monitor the apps their

---

[56] *Id.*

[57] Amazon, Child-Directed App (COPPA) Policy (last updated Jun. 01, 2020), https://developer.amazon.com/docs/policy-center/privacy-children.html#sdks-in-apps-for-childre n (last visited Oct. 14, 2025) (on file with Amazon.com).

[58] Google, How to Set Up Parental Controls on Google Play, https://support.google.com/googleplay/answer/1075738 (last visited Oct. 14, 2025) (on file with Google).

[59] *Id.*

[60] Apple, Use Parental Controls on Your Child's iPhone or iPad, https://support.apple.com/en-us/105121 (last visited Oct. 14, 2025) (on file with Apple).

children are interacting with, set daily limits or restrict their children's use at certain times of day, and restrict access to certain content.[61]

38.    In addition to the parental controls at the app store level, several of CCIA's members, acting as developers of software applications, have been leading the effort to implement parental control tools within their applications to individually tailor younger users' online use to the content and services that are suited to their unique lived experience and developmental needs.[62]

## IV.    Provisions of S.B. 2420 Relevant to this Challenge

39.    S.B. 2420 requires an app store owner to use a commercially reasonable method to verify an individual's "age category," as defined by the law, when that individual creates an account with the app store. Tex. Bus. & Com. Code § 121.021. If the app store owner determines the individual is a minor, it must require that the minor's account be affiliated with a parent or guardian's account, verify the identity of the purported parent or guardian, use "reasonable means" to obtain parental consent, and make certain required disclosures before allowing the minor to download or purchase an app or make a purchase in or using an app. *Id.* § 121.022(a),

---

[61] Amazon, Amazon Parent Dashboard, https://www.amazon.com/parentdashboard/intro (last visited Oct. 14, 2025) (on file with Amazon.com).

[62] *E.g.*, Audible, With Kids Profiles, Parents Can Now Easily Share Their Love of Stories, (Sept. 17, 2024), https://www.audible.com/about/newsroom/with-kids-profiles-parents-can-now-easily-share-their-love-of-stories (last visited Oct. 14, 2025) (on file with Amazon.com); YouTube, Important info for parents about YouTube Kids, https://support.google.com/youtubekids/answer/6130561 (last visited Oct. 14, 2025) (on file with Google); YouTube, Set up a teen supervised experience, https://support.google.com/youtube/answer/15252891 (last visited Oct. 14, 2025) (on file with Google); Amazon, What Is Amazon Kids?, https://www.amazon.com/gp/help/customer/display.html?nodeId=202119910 (last visited Oct. 14, 2025) (on file with Amazon.com); Teen safety on Pinterest, https://help.pinterest.com/en/article/teen-safety-options (last visited Oct. 14, 2025) (on file with Pinterest).

(b), (d), (f). The app store owner is also required to notify the app developer if a parent or guardian revokes consent, *id.* § 121.022(e), display an age rating for every app, along with the basis of that rating, *id.* § 121.023(a)–(b), allow app developers to access the information the app store has collected about users' age categories and parental consent statuses, *id.* § 121.024, and comply with certain requirements to protect users' personal data, *id.* § 121.025.

40.     Further, under S.B. 2420 app developers are required to "create and implement a system to use" age verification and consent-related information provided by the app store "to verify" every user's age category and—if the user is a minor—whether consent has been obtained. *Id.* § 121.054. It also requires app developers to notify app store owners before making any "significant change" to their apps' terms of service or privacy policies, at which point app store owners must notify parents and obtain consent for minors' continued use of the app. *Id.* §§ 121.053, 121.022(g). Developers must also implement a system to assign age ratings, based on the four age categories required by Texas under S.B. 2420, to every app and every in-app purchase, and provide each app store with the rating and the content or elements that led to each rating. *Id.* § 121.052.

41.     S.B. 2420 holds app stores and developers liable for "enforc[ing] a contract or a provision of a terms of service agreement against a minor that the minor entered into or agreed to without consent;" "knowingly misrepresent[ing]" information related to the age rating or the parental disclosures required by the law; "shar[ing] or disclos[ing] personal data" obtained or acquired pursuant to S.B. 2420, except for as required by the law, and, for app store owners, "obtain[ing] a blanket consent to authorize multiple downloads or purchases." *Id.* §§ 121.026(a), 121.056.

42.     Violations of S.B. 2420 are designated "deceptive trade practice," and accordingly enforcement authority has been vested in the consumer protection division of the Texas Attorney General. *Id.* §§ 121.101, 121.102; *see also* Tex. Bus. & Com. Code §§ 17.60–17.63 (granting consumer protection division of the Texas Attorney General power to enforce violations of deceptive acts or practices).

## V.     The Impact of S.B. 2420 on CCIA Members and Their Users

43.     Based on my experiences working with CCIA's members and in the digital services industry generally, S.B. 2420's restrictions will require app stores, in practice, to implement complex and costly age verification, parental consent, and parental verification procedures.

44.     To comply with S.B. 2420's age verification requirements, CCIA's covered members will need to assess the age of existing account holders and implement procedures to determine the age of future account holders when they create app store accounts. Tex. Bus. & Com. Code § 121.021(a). Covered members will then need to sort account holders into specific "age categories" designated by S.B. 2420, *id.* § 121.021(b), preventing some covered members from employing the age categorizations that those members have determined to be most appropriate for purposes of curating content on their digital services.

45.     To do so, members will spend large, unrecoverable sums up front to develop the proper capabilities.[63] Despite the fact that S.B. 2420 calls for the use of "commercially

---

[63] *See* Engine, *More Than Just a Number: How Determining User Age Impacts Startups* (Feb. 2024), https://www.engine.is/news/category/engine-releases-additional-resources-on-startups-and-age-verification (last visited Oct. 14, 2025) (estimating costs of building an in-house age verification functionality at $2 million; further estimating the cost of integrating a third-party age verification service at $50,000 plus $1.50 per instance of verification). Based on these numbers, the cost of

reasonable" methods, *id.* § 121.021(a), there is currently no standard practice for online age verification.[64] Popular options typically involve document review (e.g., presenting government ID) and/or visual inspection (e.g., estimating age based on biometric scans of a user's face).[65] Yet each method "fall[s] on a spectrum of 'dangerous in one way' to 'dangerous in a different way'" because "every solution has serious privacy, accuracy, or security problems."[66] For example, "[h]ighly accurate age assurance methods may depend on collection of new personal data such as facial imagery or government-issued ID," introducing potential privacy concerns.[67] Each method also stands to block out users who, for example, lack identification or the required camera equipment,[68] and chill privacy-minded users who do not wish to subject their faces to biometric examination[69] at a time when some age assurance vendors have failed to handle individuals'

---

age verification could amount to tens or hundreds of millions of dollars for CCIA's large app store members.

[64] Eric Goldman, *The "Segregate-and-Suppress" Approach to Regulating Child Safety Online*, 28 Stanford Tech. L. Rev. 173, 183 (2025) (observing that "there is no 'preferred' or 'ideal' way to do online age authentication").

[65] *Id.* at 183-85.

[66] Letter from Hayley Tsukayama, Assoc. Dir. of Legis. Activism, Elec. Frontier Found. (E.F.F.), to Leticia James, N.Y. Att'y Gen., at 7 (Sept. 30, 2024) regarding Advanced Notice of Proposed Rulemaking pursuant to New York General Business Law section 1500 et seq., [https://perma.cc/7ECN-8Q8M]. *See also* Shoshanna Weissmann, *The Fundamental Problems with Social Media Age Verification Legislation*, R Street (May 16, 2023), https://www.rstreet.org/commentary/the-fundamental-problems-with-social-media-age-verification-legislation/ (last visited Oct. 14, 2025) (discussing the detrimental effects of age verification on privacy, security, and protected First Amendment right).

[67] Digital Trust & Safety Partnership, Age Assurance: Guiding Principles and Best Practices, at 10 (Sept. 2023), https://dtspartnership.org/wp-content/uploads/2023/09/DTSP_Age-Assurance-Best-Practices.pdf (last visited Oct. 14, 2025).

[68] *See PSInet, Inc. v. Chapman*, 362 F.3d 227, 237 (4th Cir. 2004) (noting that making the presentation of government ID a prerequisite to accessing online content acts as "a complete block to adults who wish to access adult material [online] but do not" have the necessary documents; *see also Am. Booksellers Found. v. Dean*, 342 F.3d 96, 99 (2d Cir. 2003).

[69] Sarah Forland, *Exploring Privacy-Preserving Age Verification: A Close Look at Zero-Knowledge Proofs*, New America (July 17, 2025) ("[S]ubjecting people to unwarranted age

private data with sufficient care.[70] And to ensure the process continues to work effectively, members will need to engage in additional ongoing expenditures that maintain those capabilities. These costs cannot be recouped and are extremely burdensome on members.

46.     Similarly, S.B. 2420's parental consent requirement will force CCIA's members to implement mandatory parental-verification procedures and will require CCIA members to set up a process by which a minor's account can be linked to the minor's parent or guardian's account. Tex. Bus. & Com. Code § 121.022(a), (b). There is no accepted, effective, proportionate method of authenticating the parental or guardian status of an individual purporting to give consent for a minor user,[71] making it exceptionally difficult to remotely verify the existence of a relationship between two accounts as Texas requires. This is particularly so in instances where, for example, parents or legal guardians do not have the same last name as the children in question, or where a parent is not located in Texas. Further, S.B. 2420's parental consent requirements fail to provide app stores with guidance for handling non-paradigmatic parent-child relationships such as, for example, where the parents or legal guardians of a child are separated and may disagree about the desired online activity for their child, or where the child is in foster care.[72] These requirements thus create uncertainty for app stores and demand additional significant upfront and ongoing investments to implement.

---

verification can create a chilling effect on online activity, while also imposing greater personal data-sharing requirements on everyone.").

[70] *See* J. Kelley, Electronic Frontier Foundation, *Hack of Age Verification Company Shows Privacy Danger of Social Media Laws* (June 26, 2024), https://www.eff.org/deeplinks/2024/06/hack-age-verification-company-shows-privacy-danger-social-media-laws (last visited Oct. 14, 2025).

[71] *See* Goldman, supra note 64.

[72] *Id.*

47.     These costs will be felt by developer members as well as app store members, as S.B. 2420 requires developers to "create and implement a system" to verify, "for each user of the software application," the age category and, "for each minor user of the software application," parental consent obtained by the app store. Tex. Bus. & Com. Code § 121.054. The Act's imposition of new age rating categories—and liability for knowing misrepresentations thereof—requires developers to incur additional costs in reevaluating their content to re-rate the age appropriateness of their apps. The age rating categories prescribed by S.B. 2420 do not align with the age rating categories currently imposed by the Apple App Store and Google Play Store, thus requiring developer members to reevaluate their content according to S.B. 2420's new metrics and designate an S.B. 2420-appropriate age rating anew. This misalignment will also impose additional burdens and costs on those app stores, as the statute diverges from their own judgment about how to most appropriately classify the age-appropriateness of applications, and they will be required to determine how to integrate the new age rating system into their existing age rating and display infrastructures. These costs compound the irreparable burden S.B. 2420 will place on CCIA's members, just for the members to attempt to comply with its restrictions.

48.     Based on my years of experience and advocacy and my interactions with staff of app developers (including CCIA's members), I believe that S.B. 2420 will also impose prohibitive costs on smaller app developers that are not CCIA members. Those apps and developers may be smaller as measured in users, volume of content, number of employees, or annual revenue—or all four. What will be difficult for CCIA members will be ruinous for many more app developers. The requirements imposed by S.B. 2420 on app developers may be cost- and resource-prohibitive for smaller apps. Because all app developers must "create and implement" a system for age category and parental consent verification, and re-categorize the

age appropriateness of their apps to align with Texas's preferred groupings, some developers may be forced to entirely shut down their apps rather than shoulder these additional burdens.

49.     In addition, S.B. 2420 burdens the First Amendment rights of CCIA members who curate, disseminate, and create speech.

50.     By imposing restrictions on who may access covered members' services, including by subjecting all adult mobile app users to age verification procedures, requiring that any minor's account be affiliated with a parent account belonging to the minor's parent or guardian, and requiring parental consent before a minor can download or purchase a software application, S.B. 2420 directly abridges members' ability to curate and disseminate information to their users.

51.     S.B. 2420 also compels covered members to speak, by requiring app developers to determine, and app stores to endorse and disclose, an age rating in order to obtain parental consent for the minor to download or purchase an app, or make in-app purchases. Tex. Bus. & Com. Code §§ 121.022(f); 121.023; 121.052.

52.     Finally, CCIA's members provide vibrant communities for users to engage in vitally important forms of free expression, and S.B. 2420 will burden or eliminate their ability to engage in these various types of speech.

53.     By blocking any minor, *i.e.*, any individual *under the age of 18*, from accessing "app store[s]" unless the minor's account is affiliated with a parent account belonging to the minor's parent or guardian and requiring that minors obtain the consent of a parent or guardian before downloading or purchasing a software application or making a purchase in a software

application, Texas Bus. & Com. Code § 121.022(a), (d), S.B. 2420 restricts minors from accessing applications where they can engage in First Amendment activity.

54. In addition, S.B. 2420's requirement that covered members verify the age of all users before deciding whether to let them create an account with an app store, *id.* § 121.021(a), would also burden the speech of adults.

55. In short, if S.B. 2420 is not enjoined and is enforced against CCIA's members, CCIA's mission to promote open markets, open systems, and open networks would be directly, substantially, and irreparably harmed. Likewise, CCIA's covered members, as well as their users (both minor and adult account holders alike), will suffer irreparable harm.

I declare under penalty of perjury under the laws of the United States pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed on this 14th day of October, 2025, in Washington, DC.

Matthew Schruers