# EXHIBIT D

**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION | Civil Action No. _____ |
| *Plaintiff,* | **DECLARATION OF JEREMY STRAUSER** |
| v. | |
| KEN PAXTON, in his official capacity as Attorney General of Texas, | |
| *Defendant.* | |

## DECLARATION OF JEREMY STRAUSER

1. My name is Jeremy Strauser. I am Head of Product, Apps and Engagement at Audible. I am responsible for Audible's iOS, Android, and related app experiences. My day-to-day responsibilities include: directing the product specifications, design, and development of Audible apps including product features and capabilities such as listening, content discovery/collection, and in-app purchasing.

### BACKGROUND ABOUT AUDIBLE

2. Audible is a leading producer and provider of audio storytelling. Audible believes that stories are transformative and seeks via its offering to inspire the imagination of all its users. With its innovative approach, Audible has driven a revolution in audio entertainment.

3. Through the Audible app, users can access a million-plus audiobooks, podcasts, and other audio content. Users can listen to educational works like Carl Sagan's *Cosmos*, biographical works such as Ron Chernow's biography of Alexander Hamilton, and classic works of literature like *Moby Dick*. There's also a category of children's audiobooks, where children can listen to tens of thousands of age-appropriate stories such as *The Wind in the Willows*, *Charlotte's Web*, *The Phantom Tollbooth*, *Matilda*, *Tuck Everlasting* and *The Little House in the Big Woods*.

4. Some titles are available to listen to for free on Audible; most titles, however, are offered for purchase within the app. A portion of Audible's revenue is generated via in-app purchases.



5. Audible is a wholly owned subsidiary of Amazon, which is a member of the Computer & Communications Industry Association (CCIA).

6. Audible operates throughout the world, including in Texas. It offers Kids Profiles (as explained below) in that state. Therefore it is reasonable to conclude that its Texas users include both adults and minors. The Audible app is available on the major app stores, including the Amazon Appstore, the Google Play Store, and the Apple App Store, including on mobile devices (both mobile phones and tablets).

7. In addition to offering audio programming created by others, Audible creates and produces original audio content. Working with some of the world's greatest creators, Audible produces original audio storytelling, as well as podcasts, to bring new ideas and voices to millions of listeners around the globe. Popular examples of Audible original productions include adaptations of David Copperfield, The Little Mermaid and Pride and Prejudice, along with Impact Winter.

## AUDIBLE'S EFFORTS TO PROTECT YOUNG LISTENERS

8. As a part of Audible's service, Audible offers the ability to create a Kids Profile for parents and guardians concerned about controlling content selections for younger listeners. This is not required by Texas law. Parents or guardians can create a Kids Profile in the Audible app and add audiobooks and podcast episodes to their library for their children. Audible believes that parents and guardians should be able to choose to what extent to use those controls, based on their parenting philosophies, relationships with their children, the audio content at issue, and other factors.

9. The Kids Profile includes certain restrictions. For example, some titles are restricted from sharing, such as certain audiobooks with mature content and podcasts with ads. Titles available in a Kids Profile must be affirmatively shared by the parent or guardian account holder. Purchases cannot currently be made from a Kids Profile.

10. In addition, Audible complies with requirements imposed by app stores based on the app stores' content, rating, safety, and user-protection policies. For example, the app stores review Audible's content and test its features and functionalities to ensure the app complies with the app stores' policies in a sandboxed environment before the app is listed on the app stores.

## AGE VERIFICATION, PARENTAL CONSENT, AND AGE RATINGS

11. I understand that Texas has passed the App Store Accountability Act and that this law imposes new and burdensome requirements on Audible. Audible is committed to offering the best experience for our customers, including features enabling parents and guardians to add titles to a Kids Profile created by them for their children. The State's new law requires Audible to undertake additional work to comply with the requirements, which



Audible believes is unnecessary in light of existing laws and Audible's proactive efforts to protect its young listeners, in part by providing parents with tools to control their children's access to content on the Audible app through the Kids Profile feature. I understand that the law applies to Audible as a "developer of a software application that the developer makes available to users in [Texas] through an app store" Tex. Bus. & Com. Code § 121.051. The Audible service can be downloaded through app stores on mobile devices. *Id.* § 121.021.

### *Age Verification and Parental Consent*

12. Texas' new law requires that app developers "shall create and implement a system to use [age verification] information received" from the app store to "verify" the age category of a user and - if a minor - whether parental consent has been obtained to download the app itself or in-app content. Tex. Bus. & Com. Code § 121.054(a). Audible will incur material costs building and implementing a new "system" to comply with the law, when Audible already has a system in place to safeguard young listeners using Audible with their parents' or guardians' permission.

13. The new law prohibits users of all ages from accessing the Audible app to listen to audio content unless the user first passes the app stores' age verification and parental consent test.

14. Audible is also concerned that these new age-verification controls will inhibit access to valuable content, including its own original works and educational content. Teen reading is already in decline, and audiobooks are a practical and popular on-ramp to spark interest and engagement in reading.

15. Restricting minors from an entire medium for consuming literature and other scholarly works will also decrease user engagement with the Audible app and downloads of in-app content.

16. Audible's Kids Profiles feature already puts control over content available to their children in the hands of parents and guardians. This new law introduces unnecessary additional friction into the listening experience. And a parent can no longer decide the appropriate level of supervision for their teen's engagement with Audible content, since the age-verification and parental consent processes are mandated.

17. To comply with this new law, Audible must undertake multiple new workstreams at material unanticipated cost, including: updating technology to ingest age signals; implementing verification and parental consent processes; designing, developing, and rolling out these functionalities on the version of Audible's app available within each app store; and mitigating an anticipated loss in engagement and revenue from the mobile Audible app due to the new barriers users will face in accessing Audible's service and downloading audiobooks onto their phones and tablets.

18. Audible's mobile apps are designed specifically to optimize the user experience on mobile devices (smart phones and tablets). But apart from its mobile apps, Audible can be accessed through multiple other means. For example, Audible has a version of its app that is available on surfaces other than mobile devices, such as smart (internet-enabled) TVs, and operates a website, audible.com, that provides access to browse, purchase, and listen to our content on nearly any up-to-date internet browser. Because the new law's requirements are costly and burdensome, Audible does not currently intend to expand the new law's requirements on its non-mobile-app versions of the app.

### *Age Rating*

19. The new law requires Audible, as a software developer, to assign an age rating to its app and to each in-app purchase based on four categories: children under 13; younger teenagers 13-15; older teenagers 16-17; and adults 18 and older. *See* Tex. Bus. & Com. Code §§ 121.052(a), 121.021(b).

20. The new law specifically requires software developers to "assign to each software application and to each purchase that can be made through [Audible] an age rating" based on the law's age categories. Tex. Bus. & Com. Code § 121.052(a). Developers must provide app stores with their content ratings and the "specific content or other elements that led to each rating." § 121.052(b). The new law, therefore, can be read to require Audible to assign and explain specific, content-based age ratings to all manner of content.

21. The new law does not provide any objective criteria, or any further guidance, for how to ascribe age ratings.

22. Determining the age-appropriateness of content is highly subjective and may vary based on cultural, regional, and individual family values. Audible has historically held the view that its customers are in the best position to determine what is or is not appropriate for listeners of different ages. Requiring Audible to take a different approach to its relationship with its customers and opine on the age-appropriateness of literature, among other content, would create a significant burden for Audible as it would change the very structure of those important relationships that are foundational to Audible's business.

23. Indeed, in the audiobook industry, there are no centralized, governing guidelines in place to age-rate content.

24. Audible does not currently assign age ratings to content. Introducing a state-mandated content rating system for a million-plus titles, most of which are created by third parties, will be extremely complicated and costly. To do so, Audible would need to stand up, manage and monitor an age rating system and build out a comprehensive metadata catalog. Given fragmentation of laws, Audible will likely need to maintain multiple data sets to accommodate different standards depending on state or country.

25. Determining age ratings may also involve other parties like the myriad content creators and providers who supply audio content to Audible to determine the age-appropriateness of audio titles, further complicating the age-rating process.

26. Additionally, keeping content ratings current would be impracticable as new content is continually added to Audible's catalogue offerings. The administrative burden would be enormous, particularly given that content ratings are so subjective.

27. Further, it is infeasible for Audible to implement age ratings for each of its million-plus audio titles on a state-by-state basis, when state standards could easily differ. For example, Texas may agree with Audible's decision to list a particular title as appropriate only for adults over 18, whereas Louisiana may disagree and believe the title is appropriate for "older teenagers." *Compare* Tex. Bus. & Com. Code §§ 121.052(a), 121.021(b) *with* La. Rev. Stat. § 51:1771(1).

28. Imposing barriers to literary and educational content based on age also threatens to undermine how young adult users (i.e., teenagers) can access information and learn about the world. Moreover, rigid age categories cannot account for the natural variation in maturity among teens, making such ratings simultaneously over-inclusive and under-inclusive.

29. Potential conflicts could also arise if Audible and content providers disagree on how a particular title should be rated which could negatively impact Audible's business relationships with its providers.

30. There is also a real risk that the same title could be assigned different ratings by different apps, which could result in users having access to a particular title in one app but not the other, which could have a substantial business impact on Audible.

31. But for the Act, Audible would not review and assign age ratings to content.

### *Terms of Service Updates*

32. The new law also creates other unexpected burdens for Audible relating to updating its terms of service (TOS), which may not be easily accomplished. Specifically, Audible must notify App Stores "before making any significant change" to Audible's "terms of service or privacy policy." Tex. Bus. & Com. Code § 121.053(a). Significant changes that would trigger such notice and cause a potential change to Audible's TOS include "new monetization features"; "new opportunities to make a purchase in or using the software application"; "new advertisements in the software application;" and "material [] changes [to] the functionality or user experience of the software application." *Id.* § 121.053(b).

33. Because audiobooks are continually added by Audible for purchase, the new law could be interpreted to require Audible to update its TOS more frequently than would be



reasonable as well as require Audible to continually notify app stores about these changes. These requirements would impose ongoing, costly, and time-consuming compliance costs to implement. Further, both Apple and Google offer services in the spoken word segment: Google has YouTube, and both Apple and Google sell audiobooks. These competitors also run the app stores, who now have the authority to approve or disapprove of Audible's changes in terms of service, including new monetization features, raising the risk of competitive harm to the market for apps, thereby harming consumers, but also Audible and any other app developers, including but not only other audiobook developers, who compete with the app stores for products those stores themselves also offer to consumers.

Dated: October 15, 2025

Signed by:

*Jeremy Strauser*

51AF0AA92D3E4AC...

**JEREMY STRAUSER**