UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION,<br><br>*Plaintiff*,<br><br>v.<br><br>KEN PAXTON, in his official capacity as Attorney General of Texas,<br><br>*Defendant*. | Civil Action No. 1:25-cv-01660-RP<br><br>**CCIA'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

## TABLE OF CONTENTS

**Page**

I. The Age Verification and Parental Consent Provisions Violate the First Amendment ................................................................................................................ 2

II. The Age-Rating Requirements Are Unconstitutional ............................................. 6

III. The Remaining Factors Favor a Preliminary Injunction ........................................ 8

IV. The Act Is Not Severable ........................................................................................ 9

V. Conclusion ............................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023) ................................................................................................4

*Book People, Inc. v. Wong*,
    91 F.4th 318 (5th Cir. 2024) ..........................................................................7, 8, 10

*Brown v. Ent. Merchs. Ass'n*,
    564 U.S. 786 (2011) ..........................................................................2, 3, 4, 5, 6, 7

*Builder Recovery Servs., LLC v. Town of Westlake*,
    650 S.W.3d 499 (Tex. 2022) ..................................................................................10

*CCIA v. Uthmeier*,
    2025 WL 1570007 (N.D. Fla. June 3, 2025) .........................................................2

*Dairyland Cnty. Mut. Ins. Co. v. Roman*,
    498 S.W.2d 154 (Tex. 1973) ...................................................................................6

*Ent. Software Ass'n v. Blagojevich*,
    469 F.3d 641 (7th Cir. 2006) ..................................................................................7

*Free Speech Coal. v. Paxton*,
    606 U.S. 461 (2025) ..................................................................................1, 3, 5, 10

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ................................................................................................5

*NetChoice v. Carr*,
    789 F. Supp. 3d 1200 (N.D. Ga. 2025) ...................................................................2

*NetChoice v. Yost*,
    778 F. Supp. 3d 923 (S.D. Ohio 2025) ...................................................................2

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015) ................................................................................................4

*Reno v. ACLU*,
    521 U.S. 844 (1997) ..........................................................................................6, 10

*Riley v. Nat'l Fed'n of Blind of NC, Inc.*,
    487 U.S. 781 (1988) ................................................................................................7

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ................................................................................................2

*Texans for Free Enter. v. Texas Ethics Comm'n*,
    732 F.3d 535 (5th Cir. 2013) ..................................................................................9

*Virginia v. Am. Booksellers Ass'n, Inc.*,
    484 U.S. 383 (1988) ...................................................................................................... 10

## STATUTES

Tex. Bus. & Com. Code § 121.021 ........................................................................................ 2

Tex. Bus. & Com. Code § 121.022(a) .................................................................................... 2

Tex. Bus. & Com. Code § 121.022(b) .................................................................................... 2

Tex. Bus. & Com. Code § 121.022(d) .................................................................................... 2

Tex. Bus. & Com. Code § 121.022(f)(1) .............................................................................. 10

Tex. Bus. & Com. Code § 121.022(h) .................................................................................... 4

Tex. Bus. & Com. Code § 121.026(a)(2) .............................................................................. 10

Tex. Bus. & Com. Code § 121.026(a)(3) ................................................................................ 9

Tex. Bus. & Com. Code § 121.051 ........................................................................................ 1

Tex. Bus. & Com. Code § 121.052 ........................................................................................ 8

Tex. Bus. & Com. Code § 121.053 ........................................................................................ 8

Tex. Bus. & Com. Code § 121.056 ........................................................................................ 1

Tex. Bus. & Com. Code § 121.056(a)(2) ......................................................................... 8, 10

Tex. Bus. & Com. Code § 121.101 ........................................................................................ 2

Tex. Bus. & Comm. Code § 541.001(29) .............................................................................. 6

Tex. Bus. & Comm. Code § 541.054 ..................................................................................... 6

Tex. Bus. & Comm. Code § 541.101(4) ................................................................................ 6

Tex. Bus. & Comm. Code § 541.102(b) ................................................................................ 6

The State's Opposition confirms that CCIA is entitled to a preliminary injunction. Texas raises no justiciability issues, nor does it argue that S.B. 2420 is unfit for a facial First Amendment challenge. Instead, the State argues that the Act's age-verification and parental-consent mandates do not implicate speech at all. That contradicts settled law, including the Supreme Court's decision in *Free Speech Coal. v. Paxton*, 606 U.S. 461 (2025) ("*FSC*"), which applied intermediate scrutiny to a narrow age-verification law targeting only obscene speech unprotected as to minors. The Act, by contrast, is not tailored at all. The State does not even try to argue that its blunderbuss restrictions on access to a vast universe of speech protected for minors and adults are tailored to its broadly stated goals. Nor does Texas confront CCIA's evidence or arguments that the Act is at once sweepingly overbroad and woefully underinclusive, or offer any contrary evidence of its own. In short, Texas does not, and cannot, provide any good reason why this court should be *the first* to uphold an across-the-board age-verification and parental-consent mandate for a restriction on access to fully protected speech.

Equally infirm is the State's defense of S.B. 2420's age-rating provisions, which impose a broad compelled-speech regime and are unconstitutionally vague to boot. Texas says nothing about the obligations these provisions impose on app *developers* (Tex. Bus. & Com. Code §§ 121.051-56), such as Amazon's Audible, which must now speak about every individual expressive work they sell. The State concedes by its silence that these burdens cannot survive under the First Amendment, just like other government-mandated age ratings for expressive speech.

Finally, the State has no good response to the undisputed evidence that S.B. 2420 imposes irreparable speech and compliance burdens on CCIA's member app stores and developers. Its bid to have the court simply rewrite the statute to save it defies settled law and common sense.

I.  **The Age Verification and Parental Consent Provisions Violate the First Amendment.**

To begin, the State's defense of S.B. 2420's age-verification and parental-consent provisions mangles both the statute and settled First Amendment jurisprudence.[1]

***Burden on Speech.*** Texas argues that the verification and consent provisions impose *no* burden on Plaintiff's members' speech rights because they "don't regulate Plaintiff's members' content moderation." Opp. 15. But the First Amendment protects far more than just content moderation: it equally protects the dissemination and sale of speech, which is why bookstores, libraries, and game stores all have First Amendment rights. *See* Mot. 26-27; *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011); *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 792 n.1 (2011). The Act imposes on app stores several rigid, state-mandated gatekeeping responsibilities—roadblocks to a vast array of fully protected speech displayed by thousands of different apps. Mot. 25-35. Texas does not dispute that, without sufficient proof of age, minors and adults alike will be barred from accessing all of this content. Nor does it dispute that requiring parental consent for ***every*** app download and in-app purchase significantly burdens minors' ability to access speech that they have every right to encounter and enjoy.

The State asserts that the First Amendment is not implicated by imposing age verification to restrict minors from accessing material off-limits for them. Opp. 12-13. But that only

---

[1] Texas inaccurately asserts that "S.B. 2420 only applies to app purchases by minors in Texas." ECF 17 ("Opp.") 10. The Act imposes age verification and parental tethering at the *account-creation* stage, before any download or purchase by *every* "individual in this state." § 121.021-22(a)-(b). Its parental-consent requirements apply to *every* app download—even free ones. § 121.022(d). The State also asserts that the Act only applies to "contracts minors may wish to enter on an app store," and that liability is limited to instances where app stores enforce a contract against a minor. Opp. 9-10. That does not track the Act's enforcement language, which makes any violation "a deceptive trade practice," § 121.101. It also does not affect the First Amendment analysis, as courts addressing similar "contracting" laws have held. *E.g., NetChoice v. Yost*, 778 F. Supp. 3d 923, 947-48, 950 (S.D. Ohio 2025); *NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1221 (N.D. Ga. 2025); *CCIA v. Uthmeier,* 2025 WL 1570007, at *11 (N.D. Fla. June 3, 2025).

underscores the problem with S.B. 2420. Unlike laws imposing age verification to restrict access to guns, alcohol, or tobacco, S.B. 2420 regulates access to *speech*. And unlike laws requiring age verification to access a narrow band of *pornographic* speech minors have no legal right to view, *see FSC*, 606 U.S. at 499, the Act imposes an age-verification mandate that applies to speech *constitutionally protected for minors*—including news, information, books, movies, music, video games, and social communication. Mot. 14-15; Schruers Decl. ¶¶ 29-30. The right to access these materials does not "turn on age," *FSC*, 606 U.S. at 479, making this statute "categorically different" (Opp. 13) from the State's suggested analogs. Tellingly, Texas does not point to a single age-verification law—much less one that has survived First Amendment scrutiny—applicable to entities that disseminate or provide access to core protected speech. And in *FSC*, the Supreme Court made clear that even Texas's tailored age-verification law, aimed only at material obscene as to minors, burdens the speech rights of adults and must face heightened First Amendment scrutiny. *Id*. at 483. There can be no serious argument that S.B. 2420 avoids the First Amendment.[2]

The State also argues that the parental-consent provisions cannot be deemed governmental restrictions on speech because they empower parents. Opp. 15. But in *Brown* (an on-point ruling the State almost entirely ignores), the Supreme Court squarely rejected this argument, explaining that laws forbidding the sale of protected speech to minors without parental consent "do not enforce *parental* authority over children's speech and religion; they impose *governmental*

---

[2] At every turn, the State's reliance on *FSC* ignores that the Supreme Court did not apply strict scrutiny specifically because the age-verification statute at issue in that case restricts access *only* to material *constitutionally unprotected* for minors. 606 U.S. at 482. The ruling was overtly premised on centuries-old treatment of pornography. *Id*. at 479-80. *FSC* does not hold that a broad age verification law that restricts access to constitutionally protected material is permissible. Such a statute does not incidentally burden adults' speech while regulating activity unprotected by the First Amendment (*id*. at 482); instead, it imposes a direct barrier between individuals of all ages and entirely lawful speech.

authority, subject only to a parental veto." 564 U.S. at 795 n.3. While truly *voluntary* choices to obtain parental consent raise no constitutional issue, here the State *requires* publishers, on pain of liability, to "prevent children from hearing or saying anything *without their parents' prior consent*." *Id.* The Act does not empower parents; it conscripts them into the State's service.

**Level of Scrutiny.** CCIA's motion explains, based on considerable authority, that S.B. 2420 is content-based. Mot. 33-37. Texas ignores nearly all of this showing. The State does not discuss the Act's plainly content-based exceptions (*see* § 121.022(h)) or grapple with the avowed purpose of the law to address "[g]rowing concerns regarding the rise of social media" and "inappropriate content" on mobile apps. Mot. 23. These factors alone warrant strict scrutiny.

Instead, Texas airily asserts that the Act is content-neutral because its goal—"to protect minors and to provide parents with the information and means to do so"—is "unrelated to the content of expression." Opp. 14-16. This argument misses the mark. If such a vaguely stated goal rendered a law content-neutral, *Brown* would have come out differently, as would all the cases cited in CCIA's motion (and ignored by the State). Mot. 28 n.14. Texas also undercuts its own argument, asserting that the Act advances "the state's interest in protecting children from *objectionable material*" and helps parents "protect their children from *objectionable material*." *Id.* at 19 (emphases added). Even in this litigation, the State cannot justify the law "without reference to the content of the regulated speech." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 164 (2015).

Texas also argues that because app stores are "commercial enterprises and generate income" from apps, all the speech that flows through them must be commercial too. Opp. 17. That's not how the commercial-speech doctrine works. First Amendment protection "extends to all persons engaged in expressive conduct, including those who seek profit[.]" *303 Creative LLC v. Elenis*, 600 U.S. 570, 599 (2023); *accord Brown*, 564 U.S. at 792 n.1 (law regulating sale or

rental of video games); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964) (paid newspaper ad). That is especially so here, as S.B. 2420's requirements apply even to *free* app downloads. The Act cannot be defended as a mere commercial-speech regulation.

*Tailoring.* Other than a passing suggestion (Opp. 19-20), Texas offers no actual argument that it could satisfy strict scrutiny—"the most demanding test known to constitutional law." *FSC*, 606 U.S. at 484 (citation omitted). And even under intermediate scrutiny, Texas's defense fails. While the State rotely observes that it has an interest in protecting minors, Opp. 13-14, 18-19, it ignores the Supreme Court's admonition that states do not have "a free-floating power to restrict the ideas to which children may be exposed" and that protected speech "cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them." *Brown*, 564 U.S. at 794-95 (citation omitted). Vague appeals to parental empowerment (Opp. 19) similarly cannot save S.B. 2420. *Brown* found similar appeals "vastly overinclusive," and doubted that "punishing third parties for conveying protected speech to children *just in case* their parents disapprove of that speech is a proper governmental means of aiding parental authority." 564 U.S. at 802, 804. Texas also ignores the ways that the law actually undermines parental control—including by forbidding blanket consent and requiring app stores to bombard parents who trust and wish to empower their children with incessant consent requests. Mot. 38-39. Nor does the State explain how the Act is needed to meet this purpose, given the wide range of voluntary parental controls that CCIA members' app stores already offer. Schruers Decl. ¶¶ 33-38; Bye Decl. ¶ 30.

Beyond that, Texas provides almost no tailoring analysis. The State offers no meaningful response to CCIA's extended discussion of S.B. 2420's manifest overbreadth and underinclusiveness, or the State's diminished interest where voluntary parental controls are already in place. Mot. 35-41. The State does not even try to explain why the law, which rigidly burdens

mobile app stores and apps while imposing no regulation at all on identical content available via web browsers or non-mobile apps, is appropriately tailored.[3]

Texas's only real tailoring argument is that the First Amendment "burden [on app stores] would be *de minimis*" because some app stores already do some of what the law demands. Opp. 15. But just because private parties choose voluntarily to speak or limit their speech does not license the government to compel them to do the same on pain of severe penalties. If anything, these voluntary measures cut *against* the State, as the existing framework ensures "that parents who care about the matter can readily evaluate" the apps their children download, and the State can hardly claim a critical interest in "filling the remaining" gaps. *Brown*, 564 U.S. at 803. In any event, it is simply not true that "Google and Apple already require age verification to access their app stores" (Opp. 15), much less that they require parental consent for every app download or in-app purchase. *See* Mot. 41-42; *see also* Bye Decl. ¶¶ 29-34. Those are sweeping new obligations, and the State does not argue that they are a tailored solution to whatever inappropriate material it worries might exist within a limited subset of apps. The First Amendment does not allow Texas to "burn[] down the house to roast the pig." *Reno v. ACLU*, 521 U.S. 844, 882 (1997).

## II.     The Age-Rating Requirements Are Unconstitutional.

***Compelled Speech.*** CCIA's motion shows that the Act's age-rating requirements unconstitutionally compel speech in violation of the First Amendment rights not only of app stores, but also app developers (like the Audible app). Mot. 31-39. The State barely musters any response.

---

[3] Texas claims that the Act is intended to protect children from contracts that allow "Big Tech" to "sell [children's data] online." Opp. 9. But the mandatory age-verification and parental consent requirements that S.B. 2420 imposes are a misplaced and ill-suited means to regulate the use of personal data. They are also unnecessary. Texas already has a comprehensive privacy statute that regulates the sale of personal data, including the data of minors. *See* Tex. Bus. & Comm. Code §§ 541.054, 541.101(4) 541.001(29), 541.102(b). In any event, contracts with persons under 18 are voidable under longstanding contract law principles. *See, e.g.*, *Dairyland Cnty. Mut. Ins. Co. v. Roman*, 498 S.W.2d 154, 158 (Tex. 1973).

Opp. 22-24. Instead, it largely ignores CCIA's discussion of the First Amendment burdens on developers, effectively conceding those arguments.

Texas's main response is that the age-rating provisions are not content-based because they apply to "all apps regardless of their content." Opp. 22. This is a non sequitur. A compelled speech obligation is content-based when "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley v. Nat'l Fed'n of Blind of NC, Inc.*, 487 U.S. 781, 795 (1988). By requiring app developers and stores to publish detailed age ratings and explanations, the Act does just that. For good reason (*see* Mot. 35-37), Texas does not try to defend these mandates under the principles of *Zauderer* or as a commercial speech regulation (except for its canard, discussed above, that every regulation of app stores is commercial because the stores "generate income"). Nor does the State even try to explain how the Act's compelled age-ratings for protected speech can survive First Amendment scrutiny. *E.g.*, *Book People, Inc. v. Wong*, 91 F.4th 318, 338-40 (5th Cir. 2024) (Texas book-rating law violates First Amendment); *Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 652 (7th Cir. 2006) (Illinois videogame-rating law violates First Amendment). Instead, the State relies on laws requiring businesses to disclose the presence of toxic chemicals in their products—fact-based, uncontroversial disclosures that do not require subjective judgments, do not burden protected speech, and have no application here. *See Book People*, 91 F.4th at 340 (contrasting age ratings for books with nutrition labels).

The State's only other argument is that app stores already display age ratings for certain apps, using similar categories as S.B. 2420. Opp. 23. Here too, as in *Brown*, the existence of a voluntary ratings system undercuts the State's interest in gap-filling. 564 U.S. at 803. Moreover, Texas itself acknowledges that the Act's age categories are different from most app stores' existing ones, and would require stores to override their existing systems. Opp. 23; Mot. 33. Even more

significantly, the State disregards the extensive new burdens it places on app developers, by mandating that they rate *every piece of content* available for purchase, disclose the "specific content or other elements that led to each rating," and inform app stores of "significant changes" to their policies that might affect the age rating. §§ 121.052-53; Mot. 33-34. These requirements are entirely new, highly burdensome, and compel the creation and disclosure of subjective, and often controversial opinions. Strauser Decl. ¶¶ 22-31.

*Vagueness.* CCIA further explained that the age-rating provisions are unconstitutionally vague because they give no meaningful guidance about how the age ratings should be determined and when they have to be updated. Mot. 40, 50-51. Texas says that the vagueness of the age categories is a "complete non-issue" for developers because an age category is a "mere labeling tool" that parents can disregard. Opp. 24. But S.B. 2420 threatens developers with liability for "knowingly misrepresent[ing] an age rating," § 121.056(a)(2), so the risks posed by this standardless mandate cannot simply be shrugged off. As for the "significant change" provision, Texas does not even try to explain what a "material[] change[]" includes, apart from asserting that it must be read in context and "in light of the goals of the Act itself." Opp. 21. This vague explanation for a vague provision only underscores the constitutional problem.

### III. The Remaining Factors Favor a Preliminary Injunction.

*Irreparable Harm*. Because CCIA has established a likelihood of showing that S.B. 2420 violates the First Amendment, "no further showing of irreparable injury is necessary." *Book People*, 91 F.4th at 341. Ignoring this black-letter rule, the State again insists (citing no evidence) that compliance burdens on app stores will be minimal because of measures they already have in place to protect parents. Opp. 25. This flies in the face of ample record evidence—which Texas makes no attempt to address—detailing the substantial burdens that Texas's broad new age-

verification, parental tethering, consent, and age-rating requirements would impose on app stores and app developers. Mot. 41-42 (citing Schruers Decl. ¶¶ 43-47; Bye Decl. ¶¶ 38-39, 41, 43, 45; Strauser Decl. ¶¶ 17-18, 20, 22, 24, 26, 32-33).[4]

***Balance of Equities and Public Interest***. Perhaps recognizing that "injunctions protecting First Amendment freedoms are always in the public interest," *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (citation omitted), the State does not seriously dispute CCIA's arguments on the remaining prongs. Texas's stated commitment to parental rights cannot save S.B. 2420, for all the reasons discussed above. That is especially so given that the Act *deprives* parents of choice by prohibiting app stores from allowing parents to provide "blanket consent," § 121.026(a)(3)—a restriction the State does not explain or defend.

## IV.    The Act Is Not Severable.

Perhaps in recognition of the serious constitutional flaws described in CCIA's motion, Texas argues that any provisions deemed unconstitutional require severance or modification rather than "doom[ing] the entire law." Opp. 26-27. But the State does not address CCIA's showing that the whole structure of the Act depends on its central age-verification and parental-consent provisions. Mot. 27-31. Instead, Texas points to two provisions that it insists should be carved out: (1) an "age-rating requirement for apps with obscenity as to minors," *id.* at 24, and (2) the "18 or older" age category, *id.* at 27. Neither rescission saves S.B. 2420.

As to the first request, Texas impermissibly seeks to "rewrite a state law to conform it to constitutional requirements." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988).

---

[4] Texas's Opposition references, only once, two decade-old FTC consent decrees requiring Google and Apple to obtain consent from account holders before billing those accounts for in-app charges. Opp. 8. This point never resurfaces, likely because the consent decrees have almost nothing to do with S.B. 2420, as neither imposes any age-verification, parental-tethering, parental-consent, or age-rating requirements.

Severability "requires textual provisions that can be severed," *Reno,* 521 U.S. at 882, but no provision of S.B. 2420 mentions obscene content. Texas knows how to draft statutes to require age-verification for obscene material, *see FSC*, 606 U.S. at 466-68, and if it wants to do so for app stores, it needs to enact a law actually tailored to that end.[5] Simply put, this Court cannot sever a provision that doesn't exist.

Texas's second severance request fails because limiting the Act's age-rating requirement to the 18+ rating would not save the statute from the constitutional problems CCIA has shown. *See* Mot. 43-51; *Book People*, 91 F.4th at 325, 340. Moreover, such a hypothetical age-rating provision would still be so "connected in subject-matter [and] dependent on" the Act's unconstitutional age-verification and parental-consent provisions that "it cannot be presumed the legislature would have passed the one without the other." *Builder Recovery Servs., LLC v. Town of Westlake*, 650 S.W.3d 499, 507 (Tex. 2022) (citation omitted). S.B. 2420's age-rating scheme would force app developers and app stores to disclose information to parents to be used in connection with the (mandatory) consent process for all app downloads or in-app purchases by minors. § 121.022(f)(1). Standing alone, these compelled disclosures—and related provisions, such as the penalties for knowingly misrepresenting an age rating, §§ 121.026(a)(2), 121.056(a)(2)—would no longer serve that purpose. Because the central verification and consent provisions fall, the Act's subsidiary requirements, including age-rating, must fall with them.

V.  **Conclusion**

CCIA respectfully requests that its Motion for Preliminary Injunction be granted.

---

[5] It is perhaps unsurprising that S.B. 2420 does not address apps that are obscene as to minors, given that the State offers no evidence that such apps can even be found in the app stores targeted by the Act. *Cf.* Schruers Decl. ¶¶ 35-36 (discussing app stores' robust content policies).

Dated: November 20, 2025            /s/    Catherine L. Robb

| | |
|---|---|
| Brian Willen* <br> WILSON SONSINI GOODRICH & ROSATI <br> 1301 6th Ave #40 <br> New York, New York 10019 <br> Telephone: (650) 849-3340 <br> bwillen@wsgr.com <br><br> Lauren Gallo White* <br> WILSON SONSINI GOODRICH & ROSATI <br> One Market Plaza, Spear Tower #3300 <br> San Francisco, California 94105 <br> Telephone: (415) 947-2158 <br> lwhite@wsgr.com <br><br> Deno Himonas* <br> WILSON SONSINI GOODRICH & ROSATI <br> 95 S State St, Suite 1000 <br> Salt Lake City, Utah 84111 <br> Telephone: (801) 401-8520 <br> dhimonas@wsgr.com <br><br> *Attorneys for Plaintiff* <br><br> *pro hac vice | Laura Lee Prather <br> Texas Bar No. 16234200 <br> laura.prather@haynesboone.com <br> Catherine L. Robb <br> Texas Bar No. 24007924 <br> catherine.robb@haynesboone.com <br> Michael J. Lambert <br> Texas Bar No. 24128020 <br> michael.lambert@haynesboone.com <br> Reid Pillifant <br> Texas Bar No. 24126157 <br> reid.pillifant@haynesboone.com <br><br> HAYNES AND BOONE, LLP <br> 98 San Jacinto Blvd., Suite 1500 <br> Austin, Texas 78701 <br> Telephone: (512) 867-8400 <br> Facsimile: (512) 867-8470 |