**FILED**
December 09, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____pg_____
     DEPUTY

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, <br><br> *Plaintiff*, <br><br> v. <br><br> KEN PAXTON, in his official capacity as Attorney General of Texas, <br><br> *Defendant*. | Civil Action No. 1:25-cv-01660-RP |

## BRIEF OF CHAMBER OF PROGRESS AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF COMPUTER & COMMUNICATION INDUSTRY ASSOCIATION'S MOTION FOR PRELIMINARY INJUNCTION

**S. Lee Whitesell**
  Texas Bar No. 24093356
  HOGAN LOVELLS US LLP
  609 Main Street, Suite 4200
  Houston, TX 77044
  (713) 632-1481
  lee.whitesell@hoganlovells.com

**Mark Brennan** (*Pro hac vice forthcoming*)
  HOGAN LOVELLS US LLP
  555 Thirteenth Street, NW, Columbia Square
  Washington, DC 20004
  (202) 637-6409
  mark.brennan@hoganlovells.com

**Thomas Veitch** (*Pro hac vice forthcoming*)
  (202) 804-7837
  thomas.veitch@hoganlovells.com

**Attorneys for Amicus Curiae**

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ............................................................................... 1
SUMMARY OF ARGUMENT ..................................................................................... 2
ARGUMENT ................................................................................................................. 5
    I. The age-rating requirements in SB 2420 compel speech in violation of the First Amendment. ................................................................................................................5
    A. Courts apply strict scrutiny to laws requiring a speaker to enter the marketplace of ideas. ...................................................................................................................5
    B. SB 2420 triggers strict scrutiny ........................................................................7
    C. The age-rating requirements fail under any level of First Amendment review. ...............8
    II. The age-rating requirements will diminish speech and undermine SB 2420's purported safety and transparency goals. ...................................................................9
    A. A law that undermines the government's asserted interest cannot survive intermediate scrutiny. ................................................................................................9
    B. Many developers will be pressured to reduce apps to bland and inoffensive experiences. ...............................................................................................................9
    C. The threat of SB2420 liability will skew ratings to become over-restrictive, making it harder for young people to access resources .....................................................11
    D. Government-mandated age ratings will hinder parents seeking to help their children have positive online experiences. ..........................................................................13
CONCLUSION ........................................................................................................... 14
CERTIFICATE OF SERVICE ................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023) ............................................................................................5

*Am. Acad. of Implant Dentistry v. Parker*,
    860 F.3d 300 (5th Cir. 2017) ..............................................................................9

*Book People, Inc. v. Wong*,
    91 F.4th 318 (5th Cir. 2024) ...........................................................................3, 6

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,
    447 U.S. 557 .............................................................................................8, 9, 14

*Florida Bar v. Went For It, Inc.*,
    515 U.S. 618 (1995) ............................................................................................8

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
    515 U.S. 557 (1995) ............................................................................................5

*Janus v. Am. Fed'n of State, Cty. & Mun. Emps. Council 31*,
    585 U.S. 878 (2018) ............................................................................................5

*Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*,
    647 F.3d 202 (5th Cir. 2011) ..............................................................................5

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    585 U.S. 755 (2018) .......................................................................................3, 8

*NetChoice v. Bonta*,
    113 F.4th 1101 (9th Cir. 2024) ...................................................................3, 6, 7

*Packingham v. North Carolina*,
    582 U.S. 98 (2017) ..............................................................................................2

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ............................................................................................8

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
    487 U.S. 781 (1988) ............................................................................................5

*X Corp. v. Bonta*,
    116 F.4th 888 (9th Cir. 2024) .........................................................................3, 7

**Constitution & Statutes**

U.S. CONST., amend. I ............................................................................................. *passim*

2022 Cal. Stat. ch. 320 (AB 2273) ..............................................................................6

Texas App Store Accountability Act, Tex. Bus. & Com. Code § 121.021 *et seq.* ................ *passim*

**Other Authorities**

Apprehensive-Space94 (@Apprehensive-Space94), Reddit (r/cancer), being a teenager with a rare and incurable type of cancer (2023), https://www.reddit.com/r/cancer/comments/15k4rkc/being_a_teenager_with_a_rare_and_incurable_type............12

GAY, LESBIAN & STRAIGHT EDUCATION NETWORK, OUT ONLINE: THE EXPERIENCES OF LESBIAN, GAY, BISEXUAL AND TRANSGENDER YOUTH ON THE INTERNET 28 (2013) ............12

Samuel Gibbs, *Facebook Bans Women for Posting 'Men Are Scum' After Harassment Scandals*, THE GUARDIAN (Dec. 5, 2017), THE GUARDIAN (Dec. 5, 2017), https://bit.ly/49sRWio............10

Savannah Kuchar, *When social media censorship gets it wrong: The struggle of breast cancer content creators*, USA TODAY (Sept. 12, 2023) ............10

Kirsten Lavery, U.S. COMM'N ON PROTECTING RELIGIOUS FREEDOM, PROTECTING RELIGIOUS FREEDOM ONLINE 4-6 (2021)............10

Alexander Monea, *The Digital Closet: How the Internet Became Straight* 179 (2022).............10

Abigail Moss, *'Such a Backwards Step': Instagram Is Now Censoring Sex Education Accounts*, VICE NEWS (Jan. 8, 2021), https://bit.ly/3P2lT1d............10

**INTEREST OF AMICUS CURIAE**

Chamber of Progress is a tech-industry coalition devoted to a progressive society, economy, workforce, and consumer climate. Chamber of Progress seeks to protect Internet freedom and free speech, promote innovation and economic growth, and empower technology customers and users. In keeping with that mission, Chamber of Progress believes that allowing a diverse range of websites and philosophies to flourish will benefit everyone. Chamber of Progress's work is supported by its corporate partners, but its partners do not sit on its board of directors and do not have a vote on, or veto over, its positions. Chamber of Progress does not speak for individual partner companies and remains true to its principles even when partners disagree.

Chamber of Progress supports features to keep kids safe online, such as applications that parents can use to exclude age-inappropriate content, but is concerned that the Texas App Store Accountability Act ("SB 2420") imposes measures that violate the First Amendment and will cause great harm to young Texans. Chief among the many issues with the law,[1] SB 2420's age ratings requirements compel developers to opine on the age-appropriateness of content and compel app stores to publish these judgments. In turn, the Texas Attorney General or private litigants can sue developers if they disagree with these subjective views. This regime contravenes core First Amendment protections that prohibit forcing private actors to weigh in on subjective and controversial issues. Moreover, SB 2420's regime will erode speech across the Internet, deny young Texans access to important speech venues, and ultimately make young Texans less safe and less prepared to participate in society. Chamber of Progress therefore submits this brief in support

---

[1] This brief focuses on SB 2420's ratings requirements and harms that they will cause. Chamber of Progress also supports CCIA's challenges to SB 2420's other provisions.

of the motion for a preliminary injunction filed by the Computer & Communications Industry Association ("CCIA").[2]

## SUMMARY OF ARGUMENT

Internet apps provide access to digital tools to learn, form, and share ideas about topics from college football to astrophysics, from the best Texas BBQ to electoral politics. At the click of a button, users can download apps to take virtual tours of college campuses, identify bird calls, read reviews of summer jobs, or follow youth protest movements overseas. For many young Texans, apps are the "principal sources for knowing current events, checking ads for employment, speaking and listening[,] . . . and otherwise exploring the vast realms of human thought and knowledge." *See Packingham v. North Carolina*, 582 U.S. 98, 107 (2017).

SB 2420's ratings requirements would put this vibrant ecosystem under the government's thumb, imposing arbitrary mandates that compel—and attach liability to—impossible-to-answer questions about what is age-appropriate for all Texas minors. Under SB 2420, developers must assign ratings to its apps and in-app purchases using government-directed age categories ("child" = below 13; "younger teenager" = 13–15; "older teenager" = 16–17; or "adult" = 18+). Tex. Bus. & Com. Code § 121.021(b). They must also identify "the specific content or other elements" leading to the rating. *Id.* § 121.052(b). In turn, when a minor seeks to download an app or make an in-app purchase, app stores must provide this information and obtain parental permission. *Id.* §§ 121.022-023. The Texas Attorney General or private litigants can enforce these requirements, including in cases where a developer purportedly "knowingly misrepresents an age rating or reason for that rating." *Id.* §§ 121.056(a)(2), .101, and .102.

---

[2] No counsel for a party authored this brief in whole or in part, and no person other than Chamber of Progress, its members, or its counsel made a monetary contribution to fund the preparation or submission of this brief.

The First Amendment prohibits laws like SB 2420 that compel non-commercial, nonfactual, and/or controversial speech. *See, e.g.*, *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) (*NIFLA*). To understand why, consider the task of an app developer charged with rating an app that can access classic literature, including *Romeo and Juliet* (suicide, teenage sex), *The Great Gatsby* (alcohol, addiction), and *The Color Purple* (abuse, racism, homosexuality). This is a highly subjective inquiry, fraught with nuanced judgments about social development, cultural values, literary interpretation, and other issues. Yet SB 2420 requires the app's developer to opine publicly on these complex issues and justify its opinions. App stores too would need to publish these opinions and justifications. These types of laws requiring speakers to categorize and classify fully protected speech according to subjective criteria trigger and fail strict scrutiny and indeed fail any standard of review. *See, e.g., Book People, Inc. v. Wong*, 91 F.4th 318, 340 (5th Cir. 2024) (affirming injunction of law requiring labeling of non-obscene sexual content); *X Corp. v. Bonta*, 116 F.4th 888, 901 (9th Cir. 2024) (affirming injunction of law requiring websites to sort content under specified categories); *NetChoice v. Bonta*, 113 F.4th 1101, 1119 (9th Cir. 2024) (requiring entry of preliminary injunction of law compelling websites to "opine on potential speech-based harms to children").

Despite SB 2420's purported safety objectives, the ratings requirements will diminish speech and leave young Texans less safe and informed. Imposing potential liability for a subjective rating that describes the entirety of an app is akin to threatening liability for incorrectly answering the question: "What color is the rainbow?" Accordingly, many developers will avoid any content that could attract controversy. For example, for fear of allegations that content involves suicide and requires an "adult" rating, a messaging app might curtail discussion of veterans' mental health, SSRIs, therapy, or movies like *It's a Wonderful Life*. Or a lifestyle app might remove information

3

on healthy alternatives to popular junk food because this could risk the perception of encouraging eating disorders, requiring an "adult" rating. These decisions at scale will result in flattened discourse that favors the orthodox and anodyne over new ideas and alternative viewpoints.

The threat of punitive litigation will also incentivize developers to overzealously assign age ratings that skew older, rather than risk assertions that content is rated too young. This will make it harder for young Texans to access information that helps them stay safe and become informed citizens. For example, a magazine with articles about campus sexual assault and opioid addiction might rate its app for "older teenagers," even if it thinks that most people would agree that the articles are appropriate for younger readers. Or an app that allows users to share anonymous work experiences might be rated for "adults" because users sometimes share stories about workplace relationships or sexual harassment. These apps would respectively be off limits to 15- and 17-year-olds whose parents will not grant access to apps outside of an assigned age range, possibly due to trust in ratings, lack of technical savvy, or being too busy to consider such a request.

Moreover, the ratings will hinder parents looking to help their children have positive online experiences, further negating SB 2420's safety goals. For example, overzealous high ratings will leave parents confused by a sea of apps over-cautiously rated for "adults" or "older teenagers." And by conscripting app stores into publishing developers' ratings, SB 2420 impedes app stores' own efforts to provide information that they believe is most helpful to parents, based on established and trusted relationships with customers.

In sum, SB 2420's ratings requirements violate core First Amendment protections and will diminish speech, all while leaving young Texans less safe and informed. To prevent these harms

and promote a vibrant speech environment that benefits everyone, this Court should grant CCIA's motion for a preliminary injunction.

## ARGUMENT

I. **The age-rating requirements in SB 2420 compel speech in violation of the First Amendment.**

The ratings requirements are content-based because they compel speech. These provisions trigger strict scrutiny and fail that review and indeed all levels of constitutional review.

### A. Courts apply strict scrutiny to laws requiring a speaker to enter the marketplace of ideas.

The First Amendment protects "the right to speak freely and the right to refrain from speaking at all." *Janus v. Am. Fed'n of State, Cty. & Mun. Emps. Council 31*, 585 U.S. 878, 891 (2018). Laws that compel speech are inherently content-based because mandating statements a speaker would not otherwise make necessarily alters the content of their message. *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795 (1988). Accordingly, laws that compel disclosures that alter the message of fully protected speech receive strict scrutiny.

Strict scrutiny is also triggered where a speaker is compelled to wade into "communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes." *Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 212–13 (5th Cir. 2011) (quoting *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980)). The fact that a speaker may be a commercial entity does not weaken the level of scrutiny if the speech itself is not commercial. *303 Creative LLC v. Elenis*, 600 U.S. 570, 594 (2023) (noting that the fact that "Ms. Smith offers her speech for pay and does so through . . . a company" does not "make[] a difference"); *see Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 574 (1995) ("business corporations" have full First Amendment rights to avoid compelled speech). If a speaker who seeks to participate in the marketplace of ideas is dragged headlong into the

5

marketplace of ideas by compelled disclosure requirements, the responsible law must receive strict scrutiny.

Indeed, consistent with these principles, the Fifth Circuit recently upheld a preliminary injunction against a Texas law requiring private vendors to provide "sexual-content ratings" for the books and other media they sold, finding none of the exceptions that merit relaxed review of compelled speech applied. *Book People*, 91 F.4th at 324. As the court explained, the law forced vendors to "undertake contextual analyses, weighing and balancing many factors to determine a rating for each book" and balance "a myriad of factors that depend on community standards." *Id.* This type of requirement impermissibly compels protected speech. Key here is that the speakers were required to weigh in on when speech within the bounds of the First Amendment's protection—i.e., not obscene—was nonetheless "sexual." Whether or not protected speech is "sexual" is a subjective and fraught inquiry.

*Book People* is in accord with other Circuit Court decisions considering laws that required speakers to categorize and classify protected speech. For example, *NetChoice v. Bonta* considered the data protection impact assessment ("DPIA") requirement in California's Age-Appropriate Design Code. The DPIAs required businesses to "identify the purpose of [an] online service, product, or feature, how it uses children's personal information, and the risks of material detriment to children." 2022 Cal. Stat. ch. 320 (AB 2273). The court concluded that, "in requiring covered businesses to opine on and mitigate the risk that children are exposed to harmful content online," DPIAs cover "far more than mere commercial speech." *NetChoice*, 113 F.4th at 1119. Rather, the court found that requiring a business to identify what types of content it considers harmful to children merited strict scrutiny. The court rejected the State's argument that companies could analyze risk without opining on harmful content, reasoning that "a business cannot assess the

likelihood that a child will be exposed to harmful or potentially harmful materials on its platform without first determining what constitutes harmful or potentially harmful material." *Id.* at 1118.

Similarly, in *X Corp. v. Bonta*, the Ninth Circuit struck down portions of a law requiring websites to report whether and how they define and moderate certain content categories. These reports were not commercial speech because they "require a company to recast its content-moderation practices in language prescribed by the State, implicitly opining on whether and how certain controversial categories of content should be moderated." 116 F.4th at 901. For example, "[i]nsight into whether a social media company" thinks that hate speech includes "a post citing rhetoric from on-campus protests" would be "sensitive, constitutionally protected speech that the State could not otherwise compel . . . without satisfying strict scrutiny." *Id.* at 902.

### B. SB 2420 triggers strict scrutiny.

SB 2420 is no different from these other compelled speech provisions. The age-rating provisions by their very nature require speakers to categorize and characterize protected speech. Developers and app stores are forced to weigh in on what types of fully protected speech are appropriate for government-defined age groups, and thus are dragged into a myriad of highly politicized debates. For example, consider period-tracking apps that provide information about menstrual health, sex, and pregnancy. Some parents may consider this helpful for a 13-year-old to understand her health, while others might disagree on religious grounds. Or consider hunting apps. Some families with annual hunting traditions might bristle at an "adult" rating for these apps, while others might welcome that view due to concerns about gun violence. Texas forces developers to draw subjective lines and categorize which types of content and/or media are appropriate for minors of different ages, changing the content of their speech, thrusting them into a political debate, and triggering strict scrutiny.

### C. The age-rating requirements fail under any level of First Amendment review.

Strict scrutiny requires proving that the restriction is narrowly tailored to further a compelling government interest. *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015). This high standard is "fatal in fact absent truly extraordinary circumstances." *Free Speech Coal.*, 606 U.S. at 485. Even assuming that Texas could show a compelling state interest, SB 2420 is plainly not narrowly tailored, as it sweeps across *all* app stores and *all* app developers to compel speech on *all* apps and in-app purchases.

The rating requirements cannot survive even intermediate scrutiny. Intermediate scrutiny, under the *Central Hudson* test for commercial speech, requires showing a "substantial interest in support of its regulation," "that the restriction on commercial speech directly and materially advances that interest," and that the restriction is drawn narrowly. *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 624 (1995) (citing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 563-65(1980)). Assuming that Texas has a valid interest in providing parents maximum transparency to direct and supervise their children online, for the reasons discussed in Section II of this brief, SB 2420 does not "directly and materially" advance that interest. Rather, the law will incentivize overzealous app ratings, restricting access to important information and obstructing parents from making informed decisions—ultimately making young Texans less safe. Also, the broad reach of the statute ignores the less speech-restrictive alternatives available to Texas, such as school programming on online safety tips. *NIFLA*, 585 U.S. at 775 (concluding that law compelling speech failed intermediate scrutiny when a "public-information campaign" was an option, even where the state argued it had tried one before). Regardless of which level of scrutiny this court applies, SB 2420 fails.

## II. The age-rating requirements will diminish speech and undermine SB 2420's purported safety and transparency goals.

Under the threat of liability for ratings, developers will be pressured to drastically sanitize content or apply high age ratings overzealously, even if most content on their apps is innocuous. This will make it harder for young Texans to access important resources and parents to assess safety risks. Additionally, the age ratings requirements will undermine any independent steps that app stores might take to help parents. Because SB 2420 will in practice work against the government's asserted interest, it fails the *Central Hudson* analysis.

### A. A law that undermines the government's asserted interest cannot survive intermediate scrutiny.

Under third prong of *Central Hudson*, the government has the burden to establish that the regulation directly advances the interest asserted, such that it will in fact alleviate the claimed harm to a material degree. *Am. Acad. of Implant Dentistry v. Parker*, 860 F.3d 300, 309 (5th Cir. 2017). This burden cannot be satisfied by "speculation or conjecture," but must be shown by either empirical evidence or "history, consensus, and simple common sense." *Id.* Here, Texas, has unsurprisingly failed to meet this burden, as common sense, history, and our understanding of a "chilling effect" dictates that the practical effect of SB 2420 will be to deprive minors of useful information, and to dilute the effectiveness of current app store ratings system.

### B. Many developers will be pressured to reduce apps to bland and inoffensive experiences.

By encouraging overly restrictive ratings, SB 2420 will lead developers to strip any content that could attract controversy. Many developers prefer to rate their apps as safe for all ages to reach a wider audience and avoid suggesting that their offering is unsafe in some way. Indeed, if choosing between competing apps, even some adult users will prefer an app rated safe for everyone. Developers are also often wary of "adult" ratings because of stigmas (e.g., associations

with pornography or drugs). Moreover, many developers will prefer to avoid opining on potentially sensitive topics, as they would need to under the ratings requirement. For all these reasons, under SB 2420, developers might steer away from content that risks controversy. The result will flatten discourse and lead to a surge of bland and mindless content.

For example, apps with user-generated content will inevitably narrow what can be discussed and created, leaving socially valuable topics off-limits. This includes a wide expanse of apps, from traditional social media services, to apps for tracking books and movies, to apps for design, photography, and filmmaking. The problem is particularly likely because, to achieve content moderation at scale, developers necessarily rely on machine learning techniques that are imperfect and can miss the nuances of human behavior. Many digital services have already faced criticism for content moderation policies that are perceived as overzealous. For example, services have been accused of over-removing content discussing breast cancer,[3] workplace harassment,[4] sexual wellness,[5] LGBTQ+ themes,[6] and perspectives from religious minorities.[7]

The list of content that could be curbed is endless. Developers may worry, for example, about accusations that certain content supports eating disorders and should trigger high age ratings. This could erase discussions about popular diets, workouts, and wellness trends, such as Paleo diets, intermittent fasting, protein powder, creatine, and colostrum, preventing Texans from freely

---

[3] *See* Savannah Kuchar, *When social media censorship gets it wrong: The struggle of breast cancer content creators*, USA TODAY (Sept. 12, 2023), https://bit.ly/49sRReA.

[4] Samuel Gibbs, *Facebook Bans Women for Posting 'Men Are Scum' After Harassment Scandals*, THE GUARDIAN (Dec. 5, 2017), https://bit.ly/49sRWio.

[5] Abigail Moss, *'Such a Backwards Step': Instagram Is Now Censoring Sex Education Accounts*, VICE NEWS (Jan. 8, 2021), https://bit.ly/3P2lT1d.

[6] Alexander Monea, *The Digital Closet: How the Internet Became Straight* 179 (2022).

[7] Kirsten Lavery, U.S. COMM'N ON PROTECTING RELIGIOUS FREEDOM, PROTECTING RELIGIOUS FREEDOM ONLINE 4-6 (2021).

discussing their approaches to health and fitness. Similarly, concerns that content involving drugs should trigger high age ratings could inhibit discussion of Alcoholics Anonymous, border security, helping a loved one struggling with addiction, or critically acclaimed television shows like *Breaking Bad*, *The Wire*, and *Ozark*. The inevitable chill on speech helpful to minors that will result from the age rating requirements cuts against Texas' asserted interest.

### C. The threat of SB 2420 liability will skew ratings to become over-restrictive, making it harder for young people to access resources.

Under the threat of substantial litigation, developers will also be coerced to assign high age ratings overzealously, catering to the most content-restrictive viewpoints. For example, even if a developer thinks that most people would agree that an app is safe for anyone 13+, the developer may assign the app a rating of "older teenager" or "adult" to minimize litigation risks. In turn, young Texans will struggle to access apps that address real-world issues or provide important resources. Although their parents could theoretically permit access to an app outside their age range, many parents will trust the ratings to be accurate or default to following the ratings because they lack the resources or time to conduct research. Consequently, the age ratings will harm rather than help young Texans.

Apps provide spaces for young people to learn, encounter new ideas, find support, and participate in civic discourse. For example, teenagers may inform themselves about important decisions, such as choosing between colleges based on perspectives in the school's online communities or considering career paths based on "day-in-the-life" social media accounts. Online services can also expose young people to new perspectives from voices not represented in their day-to-day interactions, such as hearing from Americans with different political views. Additionally, apps can help young Texans find support, such as a cancer patient trying to hear

11

from others going through the same experience,[8] or an LGBTQ+ teen who feels isolated.[9] Using apps, young Texans can moreover participate in civic discourse and hone the skills of being an American citizen, having their voices heard on issues from affordability to artificial intelligence.

SB 2420's requirements will put access to these speech venues and resources in jeopardy for many young people due to overzealous age ratings. As just a sampling, some developers may feel pressure to select an adult audience for apps featuring:

- Religious texts including the Bible, Torah, and Quran, which feature sexual and violent content.
- Map and review apps that include casinos, sex shops, casinos, or liquor stores.
- Biology study materials that describe reproductive anatomy.
- Trackers for running routes, strength training, weight loss, and diets, which could be associated with eating disorders.
- Recipes for healthy eating, protein intake, and increasing muscle mass, which also could be associated with eating disorders.
- Mental wellness guides, like daily affirmations and guided meditations, which some view as contrary to their religious practice or associated with suicidal ideation.
- Sports involving violence like football, rugby, boxing, wrestling, and mixed martial arts.
- Resources to recognize sexual abuse, domestic abuse, or unhealthy relationships.
- Fundraising campaigns for breast, cervical, prostate, and testicular cancer.

---

[8] Apprehensive-Space94 (@Apprehensive-Space94), Reddit (r/cancer), being a teenager with a rare and incurable type of cancer (2023), https://www.reddit.com/r/cancer/comments/15k4rkc/being_a_teenager_with_a_rare_and_incurable_type.

[9] According to a 2024 national survey, while only 40% of LBGTQ+ youth reported living in affirming households, 68% found online spaces supportive. GAY, LESBIAN & STRAIGHT EDUCATION NETWORK, OUT ONLINE: THE EXPERIENCES OF LESBIAN, GAY, BISEXUAL AND TRANSGENDER YOUTH ON THE INTERNET 28 (2013).

Because app developers will be incentivized to err on the side of rating their apps for a more mature audience once the rating is compelled by law, the age ratings will become effectively meaningless, undermining Texas' asserted interest in increasing transparency and information about content for parents.

### D. Government-mandated age ratings will hinder parents seeking to help their children have positive online experiences.

SB 2420's ratings requirements do more than chill developers and deprive minors of access to information and resources—they also undermine parents' efforts to help their children have positive online experiences. First, the inevitable overzealous application of age ratings discussed above will substitute noise for information and make it harder for parents to make informed decisions about which downloads to permit. For example, parents may face a sea of apps rated for "adults," with no straightforward way to distinguish between the appropriateness of an app containing pornography and an app that helps their teenager track her period. Some parents may end up imposing more restrictions than they would like on their children's downloads because they feel they have no practical choice but to go by these ratings. Other parents may see the ratings as unreliable and disregard them, thereby defeating the purpose of the Act.

Second, by compelling app stores to publish developers' ratings, SB 2420 impedes any independent measures that app stores may pursue to help families. For example, app stores have established relationships with customers based on prior history, including their current app rating system. Forcing app stores to scrap their existing system and impose government-mandated age ratings adds confusion, dilutes the value of parents' prior experiences, and overall will make it harder for parents to interpret information that they receive from app stores.

Because the age rating requirements will work against Texas' purported interest in protecting minors and in promoting transparency to help parents protect minors, the Act fails under *Central Hudson*.

\* \* \*

These examples help to illustrate just some of the many ways that SB 2420's age-rating requirements will impair speech and hurt young Texans—defeating Act's goals and demonstrating why it fails under *Central Hudson*. The law will erode discussion of any number of topics, push out alternative viewpoints, and deprive young Texans of access to all kinds of beneficial uses for apps.

## CONCLUSION

For the foregoing reasons, the Court should grant CCIA's motion for a preliminary injunction.

Dated: December 2, 2025                    Respectfully submitted,

        */s/ S. Lee Whitesell*
        **S. Lee Whitesell**
        Texas Bar No. 24093356
        HOGAN LOVELLS US LLP
        609 Main Street, Suite 4200
        Houston, TX 77044
        (713) 632-1481
        lee.whitesell@hoganlovells.com

        **Mark Brennan** (*Pro hac vice forthcoming*)
        HOGAN LOVELLS US LLP
        555 Thirteenth Street, NW, Columbia Square
        Washington, DC 20004
        (202) 637-6409
        mark.brennan@hoganlovells.com

        **Thomas Veitch** (*Pro hac vice forthcoming*)
        (202) 804-7837
        thomas.veitch@hoganlovells.com

        ***Attorneys for Amicus Curiae***

**CERTIFICATE OF SERVICE**

   I hereby certify that on December 2, 2025, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court for the Western District of Texas by using the CM/ECF system, which will serve a copy of same on all counsel of record.

                */s/ S. Lee Whitesell*
                S. Lee Whitesell

               Counsel for Amicus Curiae