IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION,<br><br>*Plaintiff*,<br><br>v.<br><br>KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS,<br><br>*Defendant*. | CASE NO. 1:25-CV-01660-RP |

### KEN PAXTON'S OPPOSED MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

Defendant Ken Paxton, in his official capacity as Attorney General of Texas, ("Defendant Paxton"), hereby moves to stay preliminary injunction in this case pending the resolution of his interlocutory appeal to the United States Court of Appeals for the Fifth Circuit from the order of the Court in the above-referenced action entered on December 23, 2025, granting Plaintiff's Motion for Preliminary Injunction. *See* ECF No. 65 at 19–20.

### Background

On December 23, 2025, this Court preliminarily enjoined Defendant Paxton from enforcing S.B. 2420, finding that S.B. 2420 is likely a content-based statute, is subject to strict scrutiny, and fails that scrutiny test. Order, ECF No. 65 at 19–20. Defendant Paxton filed a timely notice of appeal on the same day. *See* Ken Paxton's Notice of Appeal, ECF No. 66.

Defendant has raised substantial arguments on the merits of the Court's judgment. As such, a stay pending appeal is warranted to allow the Fifth Circuit to evaluate the merits of the Court's order of a preliminary injunction. Further, a stay would be in furtherance of the widely recognized principle that enjoining a state's policy inflicts irreparable harm on that State, and that

1

the public interest is aligned with that of the State. The State's clear—and strong—interest in the protection of minors is well recognized. *E.g.*, *Ginsberg v. New York*, 390 U.S. 629, 640 (1968). On the other hand, the potential harms to plaintiff if a stay is granted do not outweigh this interest, given that:

(1) The Apple App Store and Google Play Store both already use age categories, and both have systems developed for age verification and age categories for content in anticipation of compliance with S.B. 2420. Google and Apple already require age verification to access their app stores, do allow parental approval, and rate and group their apps into age categories already;

(2) Similar laws in Utah and Louisiana go into effect in 2026, meaning that any costs and changes to the app store systems will still be required. S.B. 2420 therefore does not add additional burdens to Plaintiff;[1]

(3) Even if only the Texas law applied, the cost to the app stores would be minimal as the law requires only "commercially reasonable" methods be used.

**Standard**

Prior to seeking relief from the Fifth Circuit, "[a] party must ordinarily move first in the district court" for "a stay of the judgment or order" pending appeal, or for "an order suspending . . . an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1). Similarly, the Federal Rules of Civil Procedure permit a court to suspend an injunction "[w]hile an appeal is pending from an interlocutory order." Fed. R. Civ. P. 62(d). The Supreme Court has detailed a four-factor test that "governs a court's consideration of a motion for stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United*

---

[1] *Changes to Google Play for Upcoming App Store Bills for Users in Applicable US States*, GOOGLE, https://support.google.com/googleplay/android-developer/answer/16569691?hl=en.

2

*States v. Transocean Deepwater Drilling, Inc.*, 537 F.App'x 358, 360 (5th Cir. 2013) (per curiam) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,* 734 F.3d 406, 410 (5th Cir. 2013). Application of these factors is not rigid and mechanical; "the movant 'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay,'" as opposed to demonstrating a likelihood of success on the merits. *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (per curiam) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981)).

## Argument

### I. A Stay Pending Appeal Is Warranted

#### A. Texas Is Likely to Succeed

Under S.B. 2420, the state is not banning any material nor preventing any person—whether parent or child—from using any app. The law merely provides parents with tools and information enabling them to have a say in what user contracts that their minor children enter with massive corporations and what content their children are allowed to access. These are precisely the types of decisions that should be left up to parents. *See Ginsberg*, 390 U.S. at 640 ("While the supervision of children's reading may best be left to their parents, the knowledge that parental control or guidance cannot always be provided and society's transcendent interest in protecting the welfare of children justify reasonable regulation of the sale of material to them.") (*quoting People v. Kahan*, 15 N.Y.2d 311, 312 (1965) (Fuld, J., concurring)). Moreover, because the parental approval portion of the Act doesn't regulate Plaintiff's members' content moderation, it should not be seen to

directly implicate their First Amendment speech rights. While a parent can limit a minor's app usage with the Act's authority, it would not be the State doing the restricting.

Further, S.B. 2420 is not a content-based restriction on speech. Generally, in speech cases "[t]he principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (*citing Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 295 (1984)). Additionally, regulations that "serve[] purposes unrelated to the content of expression [are] deemed neutral, *even if* it has an incidental effect on some speakers or messages but not others. *Id.* at 791 (*citing Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47–48 (1986)). S.B. 2420, in requiring age verification to access app store products, and in requiring age rating of all apps, does not mandate these provisions because of disagreement with the messages of the apps it regulates—such would be logically incoherent, given the broad scope of the messages expressed through apps. Though it may be true that some app content of concern has been highlighted for illustrative effect in proving the potential dangers of unrestricted app access by minors, S.B. 2420's regulations cover all apps regardless of their content, ranging from the mundane and anodyne to the potentially offensive or obscene.

Between some provisions only having an incidental effect on adult access to speech, S.B. 2420 not concerning itself with specific speech content, and because any of the bill's provisions affecting speech directly are regulating commercial speech, S.B. 2420 should be examined under intermediate scrutiny. *See Free Speech Coal. v. Paxton*, 606 U.S. 461, 483, 499 (2025); *see also Florida Bar v. Went for It*, 515 U.S. 618, 624 (1995); *Boy Scouts of America v. Dale*, 530 U. S. 640, 659 (2000). Texas' strong interest in protecting minors and the *de minimis* burdens on app stores who are

4

already using categorical age ratings and already capable of performing age verification checks favor a stay pending appeal. *See generally Ginsberg,* 390 U.S. at 641.

### B. Texas and the Public Interest Are Substantially Injured Without a Stay

Where, as here, an injunction affects a state, the balance of equities and public interest factors merge. *See*, *e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009). The interest of the state and the public interest factors here coincide: the protection of children and granting to parents the information needed to make informed choices. *See Ginsberg*, 390 U.S. at 640 (stating the state has a strong interest in protecting children); *see also See Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) (accepting a parental "fundamental right" to direct a child's upbringing); *Farrington v. Tokushige*, 273 U.S. 284, 298 (1927) (similar).

Therefore, the interests of both the state and the public are irreparably harmed by the injunction (factors 2 and 4 listed above for the issuance of a stay). S.B. 2420 impacts truthful commercial representations, valid contract formation, and parental authorization in the purchase of apps—effectively, adhesion contracts involving minors. These practices fall within Texas's core police powers in three distinct are as: (1) consumer protection, (2) contract capacity, and (3) child protection. Without S.B. 2420, app stores are allowed to have minors download applications and make in-app purchases without giving parents accurate content information or obtaining informed parental consent.

Additionally, parents in Texas cannot make informed decisions when they lack reliable app content information or timely notice that their children are entering into contracts. S.B. 2420 provides age verification at account creation, accountability for existing age-rating systems, timely notice before minors download apps and thereby enter complex terms-of-service agreements, and

the transmission of the user's verified age range to apps so they can comply with applicable laws. In a brick-and-mortar establishment, this kind of information and age verification is already required and lawful.

As pointed out in amicus briefs, app stores have violated existing consumer protection and child privacy laws for years, even after entering a federal consent decree. *See, e.g., Computer & Communications Industry Association v. Paxton*, 1:25-cv-1660-RP (W.D. Tex.), Amicus Brief by the Digital Child Institute, ECF No. 45, at 5–6. Parents rely on app age ratings as a benchmark when deciding which apps their children can use; without the S.B. 2420 providing enforcement of the accuracy of those ratings, the ability of Texas and Texas parents to protect minors from harm is handicapped.

### C. Plaintiff Will Not Be Irreparably Injured

As pointed out above, Plaintiff is already grouping its apps into age categories and supplying information on the apps' contents to parents. The Apple and Google app stores already issue age ratings of the various apps they carry, and display those issued ratings. Complaint at 12 (ECF No. 1) ("Every app store, on information and belief, engages in age-rating."). The App stores also already provide tools which enable parents to limit what apps children are able to download or make purchases in. *Id.* at 13–14 ("CCIA's app store members also provide voluntary tools for parents to control their children's exposure to apps and the content they contain."). S.B. 2420 only requires that the stores use "commercially reasonable" means to perform the same actions that they already do as a matter of course for their business. See Tex. Bus. & Com. Code § 121.021(a). As such, very little burden is placed on Plaintiff under S.B. 2420, especially when compared to the harms allowed if S.B. 2420 is stopped from taking effect.

6

Further, as pointed out above, Google has acknowledged that two similar laws have been passed in other states and has announced changes that its Google Play Store for 2026. *Supra* at n.1. Meeting the requirements of Texas' S.B.2420 will therefore not impact the app stores, which will already be making changes to their platforms for Utah and Louisiana. S.B. 2420 is a constitutional regulation of commercial conduct.

S.B. 2420 does not restrict any ideas or viewpoints and falls squarely within Texas's authority over truthful labeling, contract capacity, and child protection. It regulates commercial speech, as the bill concerns the language app stores use to propose contracts in their role as digital retailers. The Supreme Court has repeatedly recognized that "speech that *proposes* a commercial transaction . . . is what defines commercial speech." *Bd. of Trs. v. Fox*, 492 U.S. 469, 482 (1989) (c*iting Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 761 (1976)). The provisions of S.B. 2420 regulate commercial speech by requiring that the age ratings disclosed by apps and app stores are consistent and accurate. As these age ratings are displayed to those who are considering downloading an app (or, in the context of S.B. 2420, displayed to parents who are deciding whether to permit their children to download an app), S.B. 2420 is regulating language used to propose a commercial transaction, and therefore ought to be reviewed as regulating commercial speech. Portraying these commercial requirements as restrictions on expressive activity misconstrues the purpose and effects of S.B. 2420.

## CONCLUSION

For the foregoing reasons, Defendant Paxton respectfully asks that this Court enter its order staying the preliminary injunction in this case pending resolution of Defendant Paxton's pending interlocutory appeal to the Fifth Circuit.

| | |
|---|---|
| Date: January 23, 2026 | Respectfully submitted. |
| **KEN PAXTON**<br>Attorney General | /s/ *Zachary W. Berg*<br>**ZACHARY W. BERG**<br>Special Counsel<br>Texas Bar No. 24107706 |
| **BRENT WEBSTER**<br>First Assistant Attorney General | |
| **RALPH MOLINA**<br>Deputy First Assistant Attorney General | **STEVEN B. LOOMIS**<br>Special Counsel<br>Texas Bar No. 00793177 |
| **RYAN D. WALTERS**<br>Deputy Attorney General for Legal Strategy | **OFFICE OF THE ATTORNEY GENERAL OF TEXAS**<br>Special Litigation Division<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>zachary.berg@oag.texas.gov<br>steven.loomis@oag.texas.gov |
| **RYAN G. KERCHER**<br>Chief, Special Litigation Division<br>Texas Bar No. 24060998 | |
| | **COUNSEL FOR DEFENDANT PAXTON** |

**Certificate of Conference**

I hereby certify that on January 23, 2026, I conferred with Brian M. Willen, counsel for CCIA, via teleconference regarding this Motion. Plaintiff opposes the motion.

/s/ *Zachary W. Berg*
**ZACHARY W. BERG**

**Certificate of Service**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on January 23, 2026 and that all counsel of record were served by CM/ECF.

/s/ *Zachary W. Berg*
**ZACHARY W. BERG**