## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, <br><br> *Plaintiff*, <br><br> v. <br><br> KEN PAXTON, in his official capacity as Attorney General of Texas, <br><br> *Defendant*. | Civil Action No. 1:25-cv-01660-RP |
| STUDENTS ENGAGED IN ADVANCING TEXAS, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> KEN PAXTON, in his official capacity as Attorney General of Texas, <br><br> *Defendant*. | Civil Action No. 1:25-cv-01662-RP |

## CCIA AND SEAT PLAINTIFFS' JOINT OPPOSITION TO DEFENDANT'S MOTION FOR STAY PENDING APPEAL

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

I.    ARGUMENT....................................................................................................2

    A.    Texas Has Not Shown That It Is Likely to Succeed on the Merits......................... 3

    B.    Texas Faces No Injury Absent a Stay, While a Stay Would Immediately Expose the CCIA and SEAT Plaintiffs to Immediate, Irreparable Harm. .............. 7

    C.    The Balance of the Harms and the Public Interest Favor Denying the Stay........... 9

II.    CONCLUSION..............................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                              **Page(s)**

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) .......................................................................3

*Barber v. Bryant*, 833 F.3d 510 (5th Cir. 2016) ...........................................................3

*Book People, Inc. v. Wong*, 91 F.4th 328 (5th Cir. 2024) ..........................................2, 7

*Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011) ......................3, 6

*E.T. v. Paxton*, 19 F.4th 760 (5th Cir. 2021) ..............................................................2, 7

*Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461 (2025) ...........................................5, 6

*Ginsburg,* 390 U.S. 629, 631-33 (1968) ........................................................................6

*McCullen v. Coakley*, 573 U.S. 464 (2014) ...................................................................6

*NetChoice v. Carr*, 789 F. Supp. 3d 1200 (N.D. Ga. 2025) .........................................4

*NetChoice v. Yost*, 778 F. Supp. 3d 923 (S.D. Ohio 2025) ..........................................4

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................................2

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012) .....................9

*Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535 (5th Cir. 2013) ............................9

*Texas v. United States*, 40 F.4th 205 (5th Cir. 2022)....................................................1

The State's motion to stay the preliminary injunction, CCIA Docket, ECF No. 69; SEAT Docket, ECF No. 42 ("Mot."), satisfies none of the strict prerequisites for a stay pending appeal. Granting such a stay would (1) upend the status quo; (2) subject CCIA, its members, and the SEAT Plaintiffs to irreparable harm; and (3) depart from Supreme Court and Fifth Circuit precedent. This Court already decided these factors in *CCIA's* and the *SEAT Plaintiffs*' favor when it granted CCIA and the SEAT Plaintiffs a preliminary injunction. The month-long gap between the Court's decision and the State's motion has not altered those conclusions. If anything, the State's delay belies its purported need for relief.

In granting a preliminary injunction following briefing and oral argument, this Court found that CCIA and the SEAT Plaintiffs are substantially likely to succeed on their claims that S.B. 2420 violates the First Amendment and is unconstitutionally vague. CCIA Docket, ECF No. 65, 2025 WL 3754045, at *9-10 (W.D. Tex. Dec. 23, 2025); SEAT Docket, ECF No. 38, 2025 WL 3731733, at *9 (W.D. Tex. Dec. 23, 2025) (together, the "Order"). The Court also found that a preliminary injunction is necessary to protect against the irreparable harm that CCIA, its members, and the SEAT Plaintiffs would face if this unconstitutional law were allowed to be enforced. Following that ruling, Texas waited a full month—and over three weeks after the law was scheduled to take effect—to seek a stay, and its cursory motion provides no basis for the Court to undo its own work.

Texas raises no new arguments or evidence, even though it now bears the burden to justify a belated stay request. *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022). The State essentially repeats what it already said in opposing the preliminary injunction in the first place. Those arguments lacked merit before, and if anything, they are even weaker now. For example, Texas again argues that the Act should be evaluated under intermediate scrutiny because the Act

-1-

is "not a content-based restriction on speech." CCIA Docket, Mot. at 4; SEAT Docket, Mot. at 3. That argument ignores not only the Act's content-based exceptions, but the State's own concession, *on the record* at the preliminary injunction hearing, that the Act had a clearly content-based purpose to "prevent minors from accessing addictive and harmful content without parental consent." Prelim. Inj. Hrg. Tr. 25:1-2; *see* also 2025 WL 3754045, at *5-6; 2025 WL 3731733, at *5. Not only that, Texas's motion ignores that this Court *did* analyze the law under intermediate scrutiny and still rejected it because the State failed to offer any evidence "connecting the Act's goals to its methods." 2025 WL 3754045, at *7; 2025 WL 3731733, at *7. And Texas's argument that it faces irreparable harm if enjoined from enforcing S.B. 2420 is based entirely on the assumption that the statute is constitutional—precisely what this Court has already rejected. In short, Texas has not carried its burden to show likelihood of success on the merits, and neither Texas nor the public suffer any harm from the State's inability to enforce an unconstitutional law. *Book People, Inc. v. Wong*, 91 F.4th 328, 341 (5th Cir. 2024). The stay motion should be denied.

## I.     <u>ARGUMENT</u>

A stay pending appeal is "an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009). For that reason, a stay is "an extraordinary remedy," *Texas*, 40 F.4th at 215, and the party seeking one bears the burden of showing that it is warranted. *Nken*, 556 U.S. at 433-34. "[A] four-factor test governs a court's consideration of a motion for stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) (quoting *Nken*, 556 U.S. at 426). The first two factors "are the most critical." *Id.* The "maintenance of the status quo" is also "an important consideration in granting a

stay." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978)).

### A.    Texas Has Not Shown That It Is Likely to Succeed on the Merits.

The State's motion founders on the first factor. In a detailed ruling following briefing and oral argument, this Court found that S.B. 2420 was likely unconstitutional and rejected each of the arguments the State offered in the statute's defense. Texas repeats those same arguments again, but in a more limited and half-hearted manner and despite its burden to establish this element. It offers nothing to suggest the Court made a mistake of law or fact in granting the preliminary injunction. Instead, the State bids the Court to reverse its merits conclusions just because the State is asking again. That is not enough. Indeed, even "if the underlying constitutional question [were] close," the Fifth Circuit must "uphold the injunction and remand for trial on the merits." *Ashcroft v. ACLU*, 542 U.S. 656, 664-65 (2004). But here, the merits question is not close.

As it already attempted in opposition to Plaintiffs' motions for a preliminary injunction, the State tries to cast S.B. 2420 as a statute that merely governs contracts and commercial speech, with no direct impact on anyone's First Amendment rights. CCIA Docket, Mot. at 3-4, 7; SEAT Docket, Mot. at 4, 6-7. And again this argument is mistaken. The Act does not just restrict the enforcement of contracts; it prohibits everyone in Texas from accessing fully protected speech. It does so by penalizing intermediaries (app stores) that fail to age verify every would-be user or presumptively ban minors from downloading apps or paid content within apps. It also penalizes app stores and developers that fail to speak as the State commands in the form of onerous requirements to age rate every article of speech offered for sale within any mobile app. In finding that these provisions burdened speech, this Court followed the lead of other courts—including the Supreme Court in *Brown v. Entertainment Merchants Association*, 564 U.S. 786, 792 n.1 (2011) (discussed by both Plaintiffs)—that have consistently rejected attempts to classify statutes like

S.B. 2420 as mere "contracting" laws. *See NetChoice v. Yost*, 778 F. Supp. 3d 923, 947-48, 950 (S.D. Ohio 2025); *NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1221 (N.D. Ga. 2025).

The State's assertion that S.B. 2420 can be read as only "regulating language used to propose a commercial transaction," CCIA Docket, Mot. at 7; SEAT Docket, Mot. at 6, fares no better. As this Court rightly recognized, "[t]he Act does not limit its coverage to speech that proposes a commercial transaction," 2025 WL 3754045, at *5; 2025 WL 3731733, at *5, and its onerous age verification and parental consent mandates directly burden access to "a wide variety of speech, including consuming news, social media, and entertainment." 2025 WL 3754045, at *5; 2025 WL 3731733, at *5. Moreover, as the Court concluded, even "restrictions on what content can be bought and sold may be subject to strict scrutiny." 2025 WL 3754045, at *5 (citing *Brown*, 564 U.S. at 789); 2025 WL 3731733, at *5 (citing same). Texas neither engages with the binding authority nor offers any argument that the Court has not already considered and rejected.

Texas's recycled plea for intermediate scrutiny rings particularly hollow in light of its concessions about the Act's content-based purpose and exemptions at the hearing. As this Court itself found, when the State was given the opportunity to disclaim the content-based motives of its sponsors, it doubled down and admitted "SB 2420 specifically sought to shield minors from certain speech the State deems objectionable or harmful." 2025 WL 3754045, at *5; 2025 WL 3731733, at *5. The State's assertion in the Motion that it was merely "highlight[ing] for illustrative effect" certain "app content of concern," CCIA Docket, Mot. at 4; SEAT Docket, Mot. at 4, is not credible, let alone convincing. The fact that the State's own counsel could not defend or explain the law's purpose without making express reference to certain disfavored content confirms what was already obvious. *See* Prelim. Inj. Hrg. Tr. 21:1-4, 7-9; 27:17-24 (discussing "self-harm content" and "mobile gaming"); 41:1-3. Similarly, the State's argument that "S.B. 2420's regulations cover all

apps regardless of their content," CCIA Docket, Mot. at 4; SEAT Docket, Mot. at 4, ignores that Texas already acknowledged the Act's blatant content-based exemptions at the hearing, which are enough to render the law content-based. 2025 WL 3754045, at *5-6; 2025 WL 3731733, at *5-6. The Court correctly rejected Texas's suggestion that it rewrite the law by severing those duly enacted exemptions, 2025 WL 3754045, at *6; 2025 WL 3731733, at *6, and Texas provides no argument now as to why improper severance would warrant a stay, in any case.

Texas next insists that the Act, or "[s]ome provisions" of it, merely has "an incidental effect on adult access to speech." CCIA Docket, Mot. at 4; SEAT Docket, Mot. at 4. But as the Court recognized, S.B. 2420 "restricts access to a vast universe of speech . . . akin to a law that would require every bookstore to verify the age of every customer at the door and, for minors, require parental consent before the child or teen could enter and again when they try to purchase a book." 2025 WL 3754045, at *1; 2025 WL 3731733, at *1. That includes apps that offer fully protected educational, artistic, and political speech that lies at the heart of the First Amendment for parents and minors alike. By sweeping in these apps and their users, the Act targets "fully protected speech" that everyone in Texas has a constitutional right to access—not just adult content unprotected as to minors. *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 482-83 (2025).

The bulk of the Motion is premised on the mistaken view that intermediate scrutiny applies. Even if Texas were right, it fails to explain why the Act survives that scrutiny (as is its burden), much less why this Court erred in its alternative holding that S.B. 2420 flunked even that heightened constitutional standard. *See* 2025 WL 3754045, at *7 ("On the current record, where Texas has not offered any evidence connecting the Act's goals to its methods, the Court finds that SB 2420 would fail intermediate scrutiny as well."); 2025 WL 3731733, at *7 (same). Nor could Texas make such a showing. The Act is not tailored at all to the State's purported interests, much

less the "close fit between ends and means" required under intermediate scrutiny. *McCullen v. Coakley*, 573 U.S. 464, 486 (2014). Instead, it is at once wildly overbroad (by unnecessarily encompassing all manner of benign and protected speech available through the universe of mobile apps) and underinclusive (in leaving entirely unregulated the same apps and content available on *non-mobile* apps or web browsers). Texas does not even try to address these problems, and it continues to ignore that "the interest in protecting children . . . does not justify an unnecessarily broad suppression of speech addressed to adults." *Brown*, 564 U.S. at 804-05.

Texas's passing reference to *Ginsburg v. New York* is inapposite, as that case (like the Supreme Court's more recent decision in *Free Speech Coalition*) involved a law barring minors' access to a narrow class of obscene pornographic content that they have no First Amendment right to view. *See Ginsburg*, 390 U.S. 629, 631-33 (1968); *Free Speech Coal.*, 606 U.S. at 499. Texas, of course, already has a law that does that, which the Supreme Court upheld in *Free Speech Coalition*, so S.B. 2420 will not advance that interest in a direct and material way. And neither in the preliminary injunction briefing or now does the State come close to explaining how S.B. 2420 is in any way tailored to protecting minors from any content that is constitutionally unprotected as to them. The State does not even try to show that there are *any* obscene or otherwise illegal apps available on CCIA members' app stores, or that parents could not use existing tools to prevent their kids from accessing any content not already addressed by other laws.

In short, the State cannot change the fact that S.B. 2420 is an overbroad and blunderbuss mandate that restricts access to a vast universe of speech "from the mundane and anodyne to the potentially offensive or obscene." CCIA Docket, Mot. at 4; SEAT Docket, Mot. at 4; *see also* 2025 WL 3754045, at *9 ("[O]nly in the vast minority of applications would SB 2420 have a constitutional application to unprotected speech not addressed by other laws."); 2025 WL

3731733, at *9 (same). This Court rightly found that the Act could not survive even intermediate scrutiny, and the State offers nothing to undermine that conclusion.

As Texas has failed yet again to make a passable demonstration of likelihood of success, the Court can deny the Motion on this ground alone. *See E.T.*, 19 F.4th at 764. Nonetheless, the State's Motion also fails the remaining three factors required to obtain the extraordinary relief of a stay.

**B.      Texas Faces No Injury Absent a Stay, While a Stay Would Immediately Expose the CCIA and SEAT Plaintiffs to Immediate, Irreparable Harm.**

Given the Act's effective date of January 1, 2026, a stay of any duration would immediately cause CCIA, its members, and the SEAT Plaintiffs irreparable harm, for all the reasons found by this Court. *See* 2025 WL 3754045, at *9; 2025 WL 3731733, at *9. By contrast, while the State claims irreparable harm because it cannot enforce the Act, that is wholly unsupported by the record—including the present motion. *See* 2025 WL 3754045, at *7; 2025 WL 3731733, at *7. Any suggestion that immediate enforcement is imperative is further belied by the State's choice to wait ***a full month*** after the preliminary injunction issued—and three weeks after the law would have taken effect—to even file its stay motion. Texas's unexplained delay confirms there will be no irreparable harm from preserving the status quo during the pendency of its appeal. And, of course, it is well settled that "neither [Texas] nor the public has any interest in enforcing" an unconstitutional law. *Book People*, 91 F.4th at 341 (internal quotations and citation omitted).

The relevant interests are all on the other side of the scale. Plaintiffs face irreparable harm in multiple forms, principally the First Amendment right to display and facilitate vast amounts of lawful content and core protected content, the coequal First Amendment right to access lawful content, and unrecoverable compliance costs, all of which are evidenced by the record and this Court's findings. *See* 2025 WL 3754045 at *9; CCIA Docket, Mot for Prelim. Inj., ECF No. 15,

at 41-43; Schruers Decl. ¶¶ 43-47; Bye Decl. ¶¶ 38-39, 41, 43; Strauser Decl. ¶¶ 17-18, 20, 22, 24, 26, 32-33; 2025 WL 3731733, at *9; SEAT Docket, ECF No. 5, Mot. for Prelim. Inj. at 3-4, 13, 15, 20; SEAT Decl. ¶¶ 10-18, M.F. Decl. ¶¶ 12-16, 18-19, Z.B. Decl. ¶¶ 12-20; Fernandez Decl. ¶¶ 7-9. Texas's blithe assertions that "Plaintiff[s] will not be irreparably injured" or that "very little burden is placed on Plaintiff[s] under S.B. 2420," CCIA Docket, Mot. at 6; *see also* SEAT Docket, Mot. at 6, ignores the record and sworn statements by CCIA members' and the SEAT Plaintiffs' declarants.

The Motion also argues for the first time, citing an article published by a single CCIA member that is outside the record in this case, that compliance with different laws in Utah and Louisiana mean that S.B. 2420 places no additional burden on app stores. CCIA Docket, Mot. at 2, 7. To begin, this attorney argument is not supported even by the cited article, much less by any evidence, and it is flatly contradicted by the record in this case. *See* Schruers Decl., CCIA Docket 15-1 Ex. B ¶¶ 43-46, Bye Decl., CCIA Docket 15-1 Ex. C ¶¶ 38-49. At most, the article suggests that Google is preparing to comply with other states' laws if required to do so, and gives notice to developers of the new APIs and design features that would be needed to comply with the Act. If anything, this article undermines the idea that compliance would not be burdensome. Texas's reliance on this article also ignores an even more critical point: neither Utah's nor Louisiana's laws *have taken effect yet.* The Utah law has an effective date of May 7, 2026, while Louisiana's law takes effect on July 1, 2026. Because CCIA members are not currently subject to those laws' requirements, it is absurd to suggest that members face no hardship from allowing Texas's similar law to be enforced immediately. They do, and the existence of other laws in other states that are slated to take effect later does not diminish that. Beyond that, Texas's argument makes little sense. The fact that other states have enacted similar statutes is hardly a reason to allow Texas to enforce

a law *this Court* has already found likely violates the First Amendment. The Court's Order provides powerful reasons why the Utah and Louisiana statutes are themselves unconstitutional and should never be legally enforceable. That only cuts further against a stay.

In any event, the purported preparation for compliance by one app store makes no difference to the SEAT Plaintiffs or the millions of users in Texas whose speech will be irreparably stifled by the Act. Whatever the difficulties of complying with the Act, forcing intermediaries to comply *at all* will cause immediate harm to the First Amendment rights of those Plaintiffs and people like them across Texas.

### C.    The Balance of the Harms and the Public Interest Favor Denying the Stay.

Keeping an unconstitutional law enjoined is "always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). That is especially true for "injunctions protecting First Amendment freedoms." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012). And here, given the irreparable harms Plaintiffs face, the State "would need to present powerful evidence of harm to its interests to prevent [Plaintiffs] from showing that the threatened injury outweighs any harm [the State] would suffer[.]" *Id.* at 297. The State presents no such evidence, offering only a generalized desire to give parents "information" to protect their children. CCIA Docket, Mot. at 5; SEAT Docket, Mot. at 4-5. This assertion works no better to justify a stay than it did to prevent a preliminary injunction. This Court has already found that S.B. 2420 does not meaningfully advance Texas's purported interest in empowering parents and protecting children, especially given the numerous voluntary measures that app stores and app developers have already put in place to do exactly that. 2025 WL 3754045, at *6; 2025 WL 3731733, at *6; *see also* CCIA Docket, ECF No. 15 at 7; SEAT Docket, ECF No. 5 at 4. To the contrary, the Act usurps parental authority, and as this Court noted, "Texas has existing laws

-9-

requiring age-verification for digital services providers containing one-third or more sexual material harmful to minors." 2025 WL 3754045, at *6; 2025 WL 3731733, at *6.

In short, a stay will not advance the public interest, but would only undermine it by allowing the enforcement of a sweeping speech restriction that would fundamentally disrupt the distribution of all manner of protected speech across the vast universe of mobile apps. By keeping the injunction in place, the Court maintains a status quo that preserves access to the types of speech and information that the First Amendment exists to protect.

## II. <u>CONCLUSION</u>

The State's Motion to Stay the Preliminary Injunction should be denied.

Dated: February 6, 2026                          /s/ Catherine L. Robb

Brian Willen*                                     Laura Lee Prather
WILSON SONSINI GOODRICH & ROSATI                  Texas Bar No. 16234200
1301 6th Ave #40                                  laura.prather@haynesboone.com
New York, New York 10019                          Catherine L. Robb
Telephone: (650) 849-3340                         Texas Bar No. 24007924
bwillen@wsgr.com                                  catherine.robb@haynesboone.com
                                                  Michael J. Lambert
Lauren Gallo White*                               Texas Bar No. 24128020
WILSON SONSINI GOODRICH & ROSATI                  michael.lambert@haynesboone.com
One Market Plaza, Spear Tower #3300               Reid Pillifant
San Francisco, California 94105                   Texas Bar No. 24126157
Telephone: (415) 947-2158                         reid.pillifant@haynesboone.com
lwhite@wsgr.com

Deno Himonas*
WILSON SONSINI GOODRICH & ROSATI                  HAYNES AND BOONE, LLP
95 S State St, Suite 1000                         98 San Jacinto Blvd., Suite 1500
Salt Lake City, Utah 84111                        Austin, Texas 78701
Telephone: (801) 401-8520                         Telephone: (512) 867-8400
dhimonas@wsgr.com                                 Facsimile: (512) 867-8470

*Attorneys for CCIA Plaintiff*

*pro hac vice

Dated: February 6, 2026

/s/    *Adam S. Sieff*
          Adam S. Sieff

Adam S. Sieff*
Haley B. Zoffer*
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
adamsieff@dwt.com
haleyzoffer@dwt.com

Abigail B. Everdell*
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 603-6488
abigaileverdell@dwt.com

Ambika Kumar*
Erwin Reschke (TX Bar #24110264)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 622-3150
Facsimile: (206) 757-7312
ambikakumar@dwt.com
erwinreschke@dwt.com

David M. Gossett*
Celyra Myers*
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
Telephone: (202) 973-4200
davidgossett@dwt.com
celyramyers@dwt.com

*Attorneys for SEAT Plaintiffs*

*admitted pro hac vice