UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, | § § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | 1:25-CV-1660-RP |
| KEN PAXTON, *in his official capacity as the Texas Attorney General,* | | |
| Defendant. | | |

**ORDER**

Before the Court is Defendant Ken Paxton's ("Paxton") Opposed Motion to Stay Preliminary Injunction Pending Appeal.[1] (Dkt. 69). Plaintiff Computer & Communications Industry Association ("CCIA") filed a response in opposition, (Dkt. 73), and Paxton filed a reply in support of his motion, (Dkt. 74). Having reviewed the parties' briefing, the facts, and relevant law, the Court will deny Paxton's motion.

**I. BACKGROUND**

On December 23, 2025, this Court preliminary enjoined Paxton from enforcing the Texas App Store Accountability Act, Senate Bill 2420, Tex. Bus. & Com. Code § 121.001 et seq. ("SB 2420" or the "Act"). (PI Order, Dkt. 65). SB 2420 imposes age verification, parental verification, parental consent, and compelled speech on app stores and app developers. It restricts access to a vast universe of speech by requiring Texans to prove their age before downloading a mobile app or accessing paid content within those apps and requires minors to obtain parental consent. In its

---

[1] The motion was originally filed on CM/ECF as unopposed, (Dkt. 68), and Paxton refiled the motion to change the designation from unopposed to opposed, (Dkt. 69). The Court will moot the misfiled motion. Additionally, Paxton later filed a motion to expedite the Court's ruling on its motion to stay. (Dkt. 75). In light of the Court's Order today, the Court will moot Paxton's request for expedited review.

preliminary injunction order, the Court found that CCIA has associational standing to bring its claims against Paxton, (*id.* at 8–9), and that, applying strict scrutiny, SB 2420 is likely unconstitutional, (*id.* at 9–19). After the Court preliminarily enjoined the Act, Paxton filed an interlocutory appeal to the Fifth Circuit Court of Appeals, challenging this Court's ruling. (Dkt. 66).

After filing his interlocutory appeal, Paxton filed his motion to stay the preliminary injunction during the pendency of his interlocutory appeal. (Dkt. 69). In his motion to stay, Paxton argues that the State is likely to succeed on the merits because (1) SB 2420 does not "ban[] any material nor prevent[] any person . . . from using any app;" (2) SB 2420 does not directly implicate free speech rights under the First Amendment; (3) SB 2420 is not a content-based restriction on speech; and (4) intermediate scrutiny applies. (*Id.* at 3–5). Paxton additionally contends that the State and the public interest are irreparably harmed by the injunction, (*id.* at 5–6), and CCIA will not be irreparably harmed without an injunction, (*id.* at 6–7).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(f), "[a]n appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders." Fed. R. Civ. P. 23(f). A court considers four factors in deciding whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013) (quoting *Nken v. Holder*, 556 U.S. 418, 425–26 (2009)).

## III. DISCUSSION

Applying the *Nken* factors, the Court finds that all four factors weigh in favor of denying the stay. First, Paxton has not made a strong showing that he will succeed on the merits. In less than two

2

pages of briefing, Paxton makes the same arguments regarding the constitutionality of SB 2420 that the Court rejected in its order granting the preliminary injunction. (Stay Mtn., Dkt. 69, at 3–5). Paxton continues to claim that SB 2420 is not a content-based restriction on speech and "cover[s] all apps regardless of their content." (*Id.* at 4). To the contrary, SB 2420's coverage definition excludes certain apps from restrictions like emergency services apps and standardized test apps, showing that the Act singles out specific subject matter for preferential treatment and is not content neutral. (PI Order, Dkt. 65, at 10). Plus, at the preliminary injunction hearing, the Court observed that the State repeatedly described the Act as having a content-based purpose of "preventing minors from accessing addictive and harmful content." (Minute Entry for PI hearing, Dkt.64). Finally, despite Paxton's concessions about the Act's content-based purpose, Paxton still argues that intermediate scrutiny applies. (Stay Mtn., Dkt. 69, at 4). While the Court concluded that strict scrutiny applies, (PI Order, Dkt. 65, at 9–11), the Court also found that SB 2420 would fail intermediate scrutiny because the State offered no evidence connecting the Act's goals to its methods, (*id.* at 14–15). In any event, Paxton does not explain how SB 2420 would survive intermediate scrutiny, much less make a strong showing of success on this argument. On the first *Nken* factor, Paxton's reliance on arguments that the Court rejected at the preliminary injunction stage does not display a strong likelihood of success.

To the second factor, Paxton makes no showing that the State faces irreparable injury—even setting aside Paxton's month-long delay in requesting an emergency stay. Paxton argues that the injunction causes irreparable harm because "S.B. 2420 impacts truthful commercial representations, valid contract formation, and parental authorization in the purchase of apps," topics which fall under Texas's police powers. (Stay Mot., Dkt. 69, at 5). But Paxton cites no authority to support the notion that Texas' inability to enforce SB 2420 while the lawsuit proceeds constitutes irreparable injury to Texas.

To the third factor, any potential harm to the State is outweighed by the harm that would be suffered by CCIA if the Act were not preliminarily enjoined. At risk are CCIA's constitutional rights to "display and facilitate vast amounts of lawful content and core protected content" and "access lawful content," (Resp., Dkt. 73, at 10), as well as CCIA members' costs of complying with the new law. Relying on a news article, Paxton asserts that SB 2420 "will not impact the app stores" because Google "has acknowledged that two similar laws have been passed in other states" and that, if and when they go into effect, Google will have to comply with those similar laws. (Stay Mtn., Dkt. 69, at 7). The assumptions Paxton makes from the article are contradicted by evidence already in the record that compliance would be costly and burdensome. (*See, e.g.*, Schruers Decl., Dkt. 15-1, at 25–27; Bye Decl., Dkt. 15-1, at 46–50). Beyond that, CCIA members' future efforts to comply with other states' similar laws does not diminish the harm arising from CCIA members having to comply at present with a Texas law that is likely unconstitutional. In other words, the article shows possible additional burdens placed on CCIA members by other laws not at issue in this case, not the absence of a burden from SB 2420 on CCIA members in Texas.

Fourth, the public interest favors denial. Keeping an unconstitutional law enjoined is "always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). That is especially true for "injunctions protecting First Amendment freedoms." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012). Paxton counters that the State wants to give parents tools to protect their children online, which is in the public interest, but Texas has other ways it could advance that interest. For example, Texas can enforce its existing laws; this Court recognized, "Texas has existing laws requiring age-verification for digital services providers containing one-third or more sexual material harmful to minors." (PI Order, Dkt. 65, at 18–19). Texas is also free to regulate this area by passing laws and regulations that comply with the First

Amendment. In sum, Paxton fails to show that its interest in immediately enforcing SB 2420 overrides the public interest in protecting the constitutional right to free speech.

In conclusion, all four factors weigh against a stay. Therefore, the Court will deny Paxton's request for a stay pending appeal and maintain the status quo.

### IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Paxton's Opposed Motion to Stay Preliminary Injunction Pending Appeal, (Dkt. 69), is **DENIED**.

**IT IS FURTHER ORDERED** that Paxton's Unopposed Motion to Stay Preliminary Injunction Pending Appeal, (Dkt. 68), is **MOOT**.

**IT IS FINALLY ORDERED** that Paxton's Motion for Expedited Ruling, (Dkt. 75), is **MOOT**.

**SIGNED** on May 6, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE